164 N.J. Super. 375 (1978)
396 A.2d 607
BOROUGH OF STONE HARBOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILDWOOD LOCAL 59, POLICEMEN'S BENEVOLENT ASSOCIATION OF NEW JERSEY, AND DANIEL LLOYD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1978.
Decided October 3, 1978.
Reargued December 11, 1978.
Decided on Reconsideration December 29, 1978.
*377 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. William M. Balliette, Jr. argued the cause for appellant (Messrs. Cafiero and Balliette, attorneys).
Mr. David S. Solomon argued the cause for respondent P.B.A. Local 59 (Messrs. Schneider, Cohen & Solomon, attorneys).
*378 Mr. Robert L. Taylor argued the cause for respondent Daniel Lloyd (Messrs. Way, Way & Goodkin, attorneys).
Mr. James P. Zazzali argued for amicus curiae New Jersey State Policemen's Benevolent Association (Messrs. Zazzali, Zazzali & Whipple, attorneys).
The opinion of the court was delivered by MORGAN, J.A.D.
Plaintiff Borough of Stone Harbor, a municipality which has not elected to employ under civil service, appeals from a trial court denial of its application for an injunctive order restraining defendant Daniel Lloyd, a former police officer discharged on a finding of cause therefor, from submitting the disciplinary charges brought against him to arbitration.
The pertinent facts are not disputed. On June 8, 1977 Chief William Donohue, of the Stone Harbor Police Department, brought written charges against Patrolman Daniel Lloyd. Well within 30 days thereafter the Public Safety Committee conducted a hearing, in which Lloyd participated, the result of which was a dismissal of Lloyd from the Stone Harbor police force. Final notice of Lloyd's dismissal was sent to Lloyd on July 7, 1977, two days after the decision of the Committee, and was received by Lloyd's wife on July 8, 1977. On that same day Lloyd sought, in writing, arbitration of his dismissal as a grievance under the collective bargaining agreement between defendant Wildwood Local 59, Policemen's Benevolent Association of New Jersey, and the Borough of Stone Harbor.
Lloyd, however, had initiated proceedings under the collective bargaining agreement almost immediately following his receipt of charges. Hence, on June 10, 1977, he wrote to the Police Committee advising it that he regarded the charges as grievable matters and demanded their immediate withdrawal. Not receiving an immediate answer to this letter, he wrote another letter of the same tenor and on June 23, 1977 received an answer advising him that the Committee would not withdraw the charges "pending a hearing on June 27, *379 1977." As noted before, the hearing was held and the dismissal of July 5, 1977 resulted. The subsequent demand for arbitration precipitated the present litigation.
The trial judge, in a letter opinion, denied injunctive relief holding that the statutory means provided for the review of municipal disciplinary action (N.J.S.A. 40A:14-147) was not the exclusive means of reviewing municipal discipline of police officers. He took the position that the Legislature intended, by means of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., to permit disciplinary matters to be the subject of grievance procedures if the parties so elect. Finally, he rejected the municipality's contention that the terms of the contract did not survive its expiration date, holding instead that the terms subsisted until a new contract was executed.
He did not, however, directly confront what we consider the most troublesome issue in the case, the one predicated upon the provision in the collective bargaining agreement which reserves to management, as an essential management prerogative, the right "to suspend, demote, discharge or take other disciplinary action for good and just cause according to law." The provision from which the quoted portion was taken announces the parties' understanding that
The Borough hereby retains and reserves unto itself, without limitation, all powers, rights, authority, duties and responsibilities conferred upon and vested in it prior to the signing of this Agreement by the Laws and Constitution of the State of New Jersey and of the United States, including, but without limiting the generality of the foregoing, the following rights:
There follows a list of those rights reserved for the exercise of management, including the right to manage and control the city government, its property and facilities; the right to hire employees and determine their qualifications for continued employment; and pertinent to the present matter, the right to take disciplinary action for just and good cause according to law.
*380 The municipality argues that disputes and controversies concerning the manner in which it exercises those rights reserved exclusively to it by the terms of the collective bargaining agreement are not arbitrable under the grievance procedure described in that same agreement, which reads as follows:
All grievances shall be processed as follows:
(a) They shall be discussed with the members involved and the "P.B.A." representatives, with the Chief of the Department. An answer shall be made to the "P.B.A." within five business days by the Chief.
(b) If the grievance is not settled through Step (a), the same shall be reduced to writing by the "P.B.A." and submitted to the Police Committee, and the answer to such grievance shall be made in writing, a copy to the Association, within five (5) business days of the submission.
(c) If the grievance is not settled through Steps (a) and (b), it shall be submitted in writing to the Mayor, and the answer to such grievance shall be made in writing, a copy sent to the Association, within five business days of the submission.
(d) If the grievance is not settled through Steps (a), (b) and (c), the "P.B.A." shall have the right to submit the dispute to arbitration pursuant to the rules and regulations of the New Jersey State Board of Mediation. The arbitrator shall have full power to hear the dispute and make a final determination which shall be binding on all parties. The cost of the arbitration shall be borne by the Borough and the "`P.B.A." equally.
Although seeking the right to arbitrate the propriety of Lloyd's discharge, defendants disclaim any intention thereby of limiting the municipality's right to discipline. According to their brief, they seek "only to have the factual and contractual questions involving Patrolman Lloyd's discharge resolved by the arbitrator  the tribunal the parties mutually agreed would have the authority to resolve disputes."
The problem is, of course, that ceding to the arbitrators the right to make such determinations, that is, to resolve "factual and contractual questions" concerning the discharge, so compromises the scope of the right of discipline as to leave very little to it. As we understand it, defendants want the arbitrators to determine whether Lloyd's *381 discharge was justified, not whether he did the acts which provided the cause for the discharge. In either case, the determination of just cause for some level of discipline is so inextricably bound into the right to discipline as to be inseparable from it. "Just and good cause," the contractual and statutory basis for discipline, cannot be determined in a vacuum; rather, there must be just cause for something  for reprimand, for fine, for demotion, suspension or discharge. If arbitrators are to be entrusted with determination of just cause, they necessarily will be required to relate that determination to the punishment imposed. The result of their determination will be that just cause exists for some kind of discipline or for none. Since that conclusion under the contract is a binding one, all that would be left to the municipality's right of discipline would be the right to notify the employee of its implementation of the arbitrators' determination.
Clearly, the municipality's contractually reserved right to discipline, which includes the right of discharge for just cause, cannot realistically coexist with the agreement to submit determination of when and how that right can be exercised to binding arbitration. In our view, and again realistically viewed, the two provisions are mutually repugnant and the parties cannot be presumed to have intended such repugnancy. Rather the agreement must be read in a way that harmonizes the meaning of both. Hence, despite the breadth of the language of the provision describing the grievance procedure, embracing as it does "any disagreement between the Borough and the members of the `P.B.A.' involving the interpretation, application or violation of policies, agreements and administrative decisions affecting them," those disputes arising out of the municipality's exercise of rights specifically reserved to it by the express agreement of the parties cannot be viewed as subject to the grievance procedure and hence cannot be submitted to arbitration, the final step of that procedure.
*382 This interpretation of the collective bargaining agreement is entirely consistent with a municipality's manifest responsibilities regarding the integrity and effectiveness of its local police force as reflected in our decisional law. Those in charge of a local police force have the responsibility "of sedulously maintaining departmental morale and discipline and adequate standards of service." Newark v. Massey, 93 N.J. Super. 317, 324 (App. Div. 1967); Newark v. Civil Service Comm'n, 115 N.J.L. 26, 30 (Sup. Ct. 1935). The director of a police force has a duty to "rid his department of irresponsible members." 115 N.J.L. at 32. So imperative is this responsibility that even the Civil Service Commission, a governmental agency, has sharply circumscribed powers of reviewing local disciplinary action of police officers. Newark v. Massey, supra 93 N.J. Super. at 324-25; see also Moorestown Tp. v. Armstrong, 89 N.J. Super. 560 (App. Div. 1965), certif. den. 47 N.J. 80 (1966). In obtaining the union's agreement that the right of discipline be reserved for its exclusive exercise, the municipality was doubtless aware of its heavy responsibility and was seeking the means by which it could be fulfilled. To entrust exercise of the right to determine when and how to discipline to a board of arbitrators whose decision would for all intents and purposes be insulated from any judicial review on its merits, N.J.S.A. 2A:24-8, would be to deprive the municipality of that to which it was entitled, the means of fulfilling its duty under the law.
Hence, the agreement as we interpret it is in accord with normal expectations. To hold otherwise would render ineffective the municipality's reserved right of discipline and would compromise the power of the municipality to control morale and insure adequate standards of safety and performance.
We, therefore, conclude that under the collective bargaining agreement the dispute concerning Lloyd's discharge is not arbitrable and that the municipality's application for an *383 order restraining arbitration of that issue should have been granted. Because of the grounds of disposition, we find it unnecessary to consider the other grounds for appeal.
Reversed. The trial court order denying plaintiff's application for injunctive relief is vacated and judgment granting the restraint against arbitration is hereby entered.
FRITZ, P.J.A.D. (concurring).
I agree wholeheartedly with the majority opinion in its recognition of the fact that the contract between the union and the borough reserves to the borough the right to discipline, including the nature and extent of the discipline, as a managerial prerogative of government subject neither to negotiation nor arbitration. I agree that in the circumstances of this case, where express contract language reserves that right "without limitation" and discipline depends solely on "good and just cause according to law," the right is wholly available in an absolute sense and may not be subjected to arbitration.
However, I also believe that there are areas of conduct which, while thought undesirable by some or many, might not be so incompatible with honorable governmental service that they should be held as a matter of law to be nonnegotiable and hence not arbitrable. As to these I would permit the parties to negotiate and to draft their contract accordingly. Needless to say, in such case I would also make the fact of the presence or absence of the operative conduct susceptible to arbitration (if the contract contained an arbitration clause, of course). As I understand it, there is no intention in the majority opinion to the contrary.
In any event, such is not the case here and I agree the determination below should be reversed and the injunction should issue.

Supplemental Opinion on Reconsideration
The opinion of the court was delivered by MORGAN, J.A.D.
In our opinion filed October 3, 1978, we reversed the trial court order denying plaintiff's application *384 for injunctive relief restraining arbitration. We held, in substance, that the parties' collective agreement, as we interpreted it, did not provide for binding arbitration as a means of resolving a grievance concerning the discharge of a police officer for just cause. We granted rehearing of this appeal in order to consider the contention that our opinion was inconsistent with West Windsor Tp. v. Public Employment Rel. Comm'n, 78 N.J. 98 (1978). After considering the briefs submitted and the matters referred to in oral argument, we conclude that the contention of inconsistency with binding authority lacks merit and we perceive no warrant for disturbing our prior opinion in this matter.
The fundamental issue considered in West Windsor concerned the scope of grievable matters mandated by the applicable provisions of the New Jersey Employer-Employee Relations Act, L. 1968, c. 303, as amended L. 1974, c. 123, N.J.S.A. 34:13A-1 et seq. The Local maintained that the statute required a definition of "grievance" covering matters beyond disputes arising under the terms of the collective bargaining agreement. The township, however, would have limited the definition of grievance to those disputes concerning terms and conditions of employment specified in the collective agreement as ultimately settled; disputes over matters not covered by the agreement would not be cognizable as grievances under the agreement and would have to be presented in a forum other than that provided by the contractual grievance procedure. The West Windsor court resolved this issue by holding that agreed grievance machinery must "cover" disputes arising not only from the terms and conditions of employment specified in the collective agreement, but also disputes arising from those matters not included in the contract  for example, those involving the "interpretation, application or violation" of those "policies, agreements or administrative decisions" which affect the terms and conditions of employment. This mandated *385 scope of grievability, however, extends only to the presentation stage of the grievance procedure. The details of that procedure thereafter remain negotiable and are to be defined by agreement of the parties as evidenced by an executed collective agreement. Such details include, of course, an agreement as to whether the grievance will be finally resolved by binding arbitration. In the succinct terms of the West Windsor opinion, "mandatory grievability does not necessarily equal mandatory arbitrability." Id. at 107.
The contract in this case, drawn and executed well before West Windsor was decided, necessarily failed to track the concepts delineated in that opinion. Nonetheless, we are satisfied that a fair reading thereof discloses that the dispute concerning Lloyd's discharge was made grievable at the initial presentation stage. He was afforded a hearing concerning this grievance at his request and he makes no complaint concerning any procedural deficiency in that regard. Hence, scope of grievability was not an issue in this case as it was in West Windsor. Rather, the issue presented was whether the collective contract governing the terms and conditions of plaintiff's employment stipulated binding arbitration as the ultimate means of resolving disputes concerning police officer discipline.
If we correctly read West Windsor, nothing therein can legitimately be viewed as inconsistent with the previously filed opinion of this court. Indeed, West Windsor explicitly took the position that arbitrability of a grievance was a procedural detail amenable to negotiation by the parties. Our opinion was limited to holding that the parties, in their contract, failed to agree to submit matters concerning the discharge of a police officer for cause to binding arbitration. We did not hold that law or public policy precluded them from so agreeing; on that issue we took no position. The reasons previously given for our holding still obtain.
Accordingly, our opinion filed October 3, 1978 remains unchanged.