DEMAREST BOARD OF EDUCATION, PETITIONER-APPELLANT,
v. DEMAREST EDUCATION ASSOCIATION,
RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1980—Decided December 16, 1980.

Before Judges ALLCORN, KOLE and PRESSLER.

*David A. Wallace* argued the cause for appellant (*Aron, Till & Salsberg*, attorneys; *Richard M. Salsberg* on the brief).

*Theodore M. Simon* argued the cause for respondent Demarest Education Association (*Goldberg & Simon*, attorneys; *Sheldon H. Pincus* on the brief).

*Don Horowitz*, Deputy General Counsel, argued the cause for Public Employment Relations Commission (*Sidney H. Lehman*, General Counsel, of counsel).

The opinion of the court was delivered by

KOLE, J. A. D.

Sandra Gottesman (Gottesman) was a nontenured part-time librarian-associate media specialist[1] in the Demarest school system. On October 2, 1978 she submitted a request to her principal for a four-day leave of absence to accompany her husband to a business convention. Her request was denied by the principal,

---

[1]Throughout these proceedings she is considered by all parties and PERC as a teacher.

the superintendent of schools and the board of education (the board). On November 10, 1978 she notified the board that she would be absent November 13 through 16 for that purpose. On November 16, 1978 she was informed by the superintendent that she had been suspended and on November 21, the board terminated her employment without pay. The Demarest Education Association (Association) filed a grievance and ultimately a demand for arbitration, alleging that the board's action violated "Articles I, II, V, VIII, X, XIV, Appendix A and other relevant provisions of the contract" between the Association and the board.[2] In particular, the grievance stated that Gottesman had exercised her rights in accordance with "Article VIII, *Leaves of Absence*" of the contract and sought $5,175, her salary for the balance of her contract term. The demand for arbitration identified the grievances to be arbitrated as (1) improper denial of leave and (2) improper discipline and termination.

Faced with the demand for arbitration, the board filed with the Public Employment Relations Commission (PERC) a petition for a scope of negotiations determination. The petition alleged that the issue submitted to arbitration was whether Gottesman's decision to absent herself from her duties for a four-day period, in direct violation of a board decision not to grant such time off without pay, was sufficient reason to terminate her employment. According to the petition, the sole issue to be determined by PERC was whether the "criteria" for dismissal of this nontenured teacher, "namely the blatant insubordination of this employee in the face of a Board order, which resulted in the disruption of the educational program of the students of the Demarest School System, is a term or condition of employment within the scope of negotiations which must be either negotiated or subject to arbitration." The board stated that its policy on absenteeism was a matter of educational policy which did not

---

[2]The record only contains the provisions of Article IV, "Grievance Procedure" and Article VIII, "Leaves of Absence."

involve terms and conditions of employment and which could not be the subject "for the grievance procedure and/or arbitration."

By agreement of the parties, the arbitration was stayed pending determination of the scope issue by PERC.

PERC held[3] that the "clause in question," Article VIII, paragraph K (¶ K) of the contract, providing that "Unexcused absences for a period of 10 or more consecutive school days shall constitute grounds for suspension and/or dismissal," related to a term and condition of employment, that is, unexcused absences, or alternatively, discipline for cause. It thus ordered that the board's request for a permanent restraint of arbitration be denied. This appeal by the board followed.

In arriving at its conclusion PERC focused its examination on the negotiability of the foregoing contractual provision alleged to have been violated and referred to the fact that the Association contended that paragraph J of Article VIII (¶ J) governed unexcused leaves of absence of less than ten days. Paragraph J provides that refusal by an employee to explain an absence or to provide reasonable documentation to substantiate an explanation thereof "shall be considered a violation" of the contract "and may be considered as a reasonable basis for loss of compensation for the absence in question." PERC found that ¶ K was not intended to provide evaluative criteria for teachers, which concededly would be nonnegotiable and nonarbitrable, but rather that this clause "reasonably may be interpreted as conferring a benefit upon unit members by allowing teachers to take up to ten (10) consecutive days unexcused absence without fear of serious reprisal. Such a construction is supported by both the title of the article and the content of the other paragraphs contained therein."

We accept the statement in PERC's brief as to the issue that it decided. It asserts that the negotiability of ¶ K is "what PERC decided below and what the instant appeal is all about.

---

[3] PERC's decision was by a divided (2–1) vote.

PERC's jurisdiction regarding the scope of negotiations does not extend beyond its determination below: The contract clause in question related to unexcused absences and discipline for cause, which are mandatorily negotiable terms and conditions of employment"—and thus arbitrable.[4]

In predicating its determination of negotiability on this provision of the contract, PERC erred so markedly that the usual judicial appellate deference to scope of negotiations matters decided by it is inapplicable. *See State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 83–84 (1978). PERC's conclusion that ¶ K constitutes a properly negotiable contract provision, in our view, violates fundamental notions of what constitutes managerial prerogatives or major educational policy, as opposed to terms and conditions of employment that do not significantly interfere with the exercise of inherent or express management prerogatives pertaining to the determination of such educational policy. *See State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 67. *See, also, Woodstown-Pilesgrove Bd. of Ed. v. Woodstown-Pilesgrove Ed. Ass'n,* 81 *N.J.* 582, 589, 593 (1980) (*Woodstown-Pilesgrove*).

Paragraph K represents such an abdication by the board of its managerial policy-making prerogative and duty with respect to operating a thorough and efficient school system for the benefit of students as plainly to constitute a nonnegotiable matter between it and the Association. *See Woodstown-Pilesgrove, supra.* As interpreted, and reasonably so, by PERC, it limits the board's authority with respect to the discipline of teachers by prescribing the minimum period of time—ten consecutive days of unexcused absences—which "shall" authorize the institution of suspension or dismissal proceedings. Any unexcused absences involving less than ten consecutive days thereof may only be

---

[4]Among other things, PERC stated that "this matter involves a grievance over the violation of a *negotiated term* of the contract and comes directly within the parameters of traditional grievance arbitration." (Emphasis supplied).

penalized by some lesser sanction, such as loss of compensation, whether or not the absence was in direct contravention of a denial by the board of a request therefor. Thus, for example, a teacher who decides to be absent without excuse every Monday for ten weeks could not be disciplined by way of suspension or dismissal, even though it might well be evident to the board that such unexcused voluntary absences would seriously interfere with the efficient operation of the school system. And this even though such absences were in the face of an express denial by the board of a request therefor.

The board's authority as to a matter of this kind cannot be so restricted in advance without substantially trenching on its responsibility to insure that all children receive a thorough and efficient education. *Cf. Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n*, 79 *N.J.* 311, 320–324 (1979) (*Bernards Tp. Bd. of Ed.*); *Ramapo Indian Hills Ed. Ass'n, Inc. v. Ramapo-Indian Hills Reg'l. High School Dist. Bd. of Ed.*, 176 *N.J.Super.* 35 (App.Div. 1980) (*Ramapo-Indian Hills*).

It is true, as PERC stated in its opinion, that the board has the statutory authority to fix, either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, *N.J.S.A.* 18A:30–7, and thus a contractual provision relating to such absences—*e. g.* compensation—ordinarily may be negotiated. *See Hunterdon Cent. High Sch. v. Hunterdon Cent. High Sch. Teachers' Ass'n*, 174 *N.J.Super.* 468, 473 (App.Div.1980); *Piscataway Tp. Bd. of Ed. v. Piscataway Main.*, 152 *N.J.Super.* 235, 243–244 (App.Div.1977). But that does not mean that the board may limit in advance its discretionary managerial authority as to the minimum number of consecutive days of absence or similar criteria that may justify the sanction of suspension or discipline, particularly where, as here, there has been a defiance of a denial of a leave of absence.

It is not appropriate, as PERC suggests in its brief, to leave to the arbitrator the matter of interpreting ¶ K in such fashion as not to undermine the managerial prerogative or the policy-mak-

ing functions of the board. This is so even though under the contract the arbitrator's authority extends to binding arbitration of grievances pertaining to the interpretation, application or violation of the terms of the contract. *See Bernards Tp. Bd. of Ed., supra,* 79 *N.J.* at 324, and the opinion in *Stone Harbor v. Wildwood Loc. 59 P.B.A.,* 164 *N.J.Super.* 375 (App.Div.1978) (*Stone Harbor*), cited therein.[5] We note that in its opinion PERC itself undertook to construe that provision and did not indicate that it was leaving that task to the arbitrator or that its interpretation should not bind the arbitrator.

Normally, in scope of negotiations cases, PERC addresses the abstract issue of whether the subject matter in dispute is within the scope of collective negotiations. "Whether that subject is within the arbitration clause of the agreement, whether the facts are as alleged by the grievant, whether the contract provides a defense for the employer's alleged action, or even whether there is a valid arbitration clause in the agreement, or any other question which might be raised" is not to be determined by PERC in a scope proceeding. "These are questions appropriate for determination by an arbitrator and/or the courts." *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 *N.J.* 144, 154 (1978).

But in this case PERC decided the scope question and bottomed the determination thereof solely in the context of what it considered to be a reasonable interpretation of ¶ K of the parties' contract. It thus concluded that the specific provisions of ¶ K were negotiable and arbitrable, contrary to our view herein expressed that they involved matters primarily of significant educational policy and prerogative that the board could not bargain away or make subject to binding arbitration.

---

[5]We do not consider the fact that in the public employment context an arbitrator's determination in binding arbitration must take into account pertinent statutory criteria and the public interest and welfare, *see Kearny PBA Local # 21 v. Kearny,* 81 *N.J.* 208, 217 (1979), as in any wise affecting the fundamental issue of what matters are negotiable and arbitrable.

Since PERC's determination was predicated exclusively on the negotiability and arbitrability of ¶ K itself, it should not have decided as abstract issues in the present case the following: (1) that suspension or termination of employment of a nontenured teacher during the term of her contract, or some lesser sanction, involves primarily a term and condition of employment that is negotiable and subject to grievance arbitration (*see West Windsor Tp. v. Public Employment Rel. Comm'r*, 78 *N.J.* 98, 115–117 (1978); *see, also, Bernards Tp. Bd. of Ed., supra,* 79 *N.J.* at 323–324); (2) that the matter of leaves of absence, including those that are unexcused, is negotiable and arbitrable, since it may relate to a term and condition of employment; (3) that insubordination by a teacher is negotiable and arbitrable by reason of its involving a disciplinary matter, or (4) that, conceding the involvement here of management's educational policy or judgment or its prerogative unilaterally to decide to use absenteeism as an evaluative criterion, the application of such a decision through establishment of various disciplinary sanctions so directly affects the welfare of teachers and the terms and conditions of employment that the matter is negotiable and typically one for review by an arbitrator. (*Woodstown-Pilesgrove, supra,* 81 *N.J.* at 589–590).

As indicated in note 2, *supra,* the record before us only included the provisions of Article IV ("Grievance Procedure") and Article VIII ("Leaves of Absence"). Inquiry by us after argument indicated that the entire contract was before PERC when it made its decision and should have been included as part of the appellate record. Accordingly, we called for and obtained a copy of that contract.

Other provisions of the contract firmly support our conclusion that the provisions of ¶ K were nonnegotiable. They also convince us that even as a matter of contract arbitrability, a subject not within the scope jurisdiction of PERC—and also generally not within our appellate purview in a scope case—the parties intended that ¶ K, as applied to the present grievance, not be subject to arbitration but rather be considered a discretionary

managerial matter for the board, subject to review by the Commissioner of Education. *See, Bor. of Stone Harbor, supra.*

Thus, Article II provides that except as *explicitly* limited by a *specific provision* of the contract and *L.* 1968, c. 303, as amended and supplemented, the board "shall continue to have the exclusive right to take any action it deems appropriate in the superintendence, management, and control of the educational affairs of the school district, and to this end it hereby reserves to itself all powers, functions, and prerogatives granted expressly or by implication, or reasonably necessary to discharge the duties imposed by the statutes of the State of New Jersey." Again, in Article IV, dealing with grievance procedures, a plain distinction is made between a grievance that may result in binding arbitration—*i. e.*, one based on the interpretation, application or violation of the contract terms—and a grievance that may only proceed to the level of the third step, a hearing and decision by the board—*i. e.*, one that involves board policy or administrative decision.

Additionally, Article VIII, relating to leaves of absence, provides specifically for personal illness leave (¶ A), bereavement leave (¶ B), three days per year personal leave with pay "on matters of personal business, including religious observance" (¶ C), leaves for professional reasons (¶ D), military leave (¶ E), pregnancy leave (¶ F), child-rearing leave (¶ G) and paternity leave (¶ H). It further provides, however, that leaves of absence with or without pay for other reasons "may be granted by the Board upon such conditions as the Board in its discretion may prescribe" (¶ I). Paragraph J provides that absences "upon any of the aforesaid grounds," at the principal's request, shall be fully explained, and if not so explained "may be considered a reasonable basis for loss of compensation for the absence in question"; but that this provision shall not apply to "leaves for personal business." The next provision is ¶ K, that here involved, dealing with unexcused absences and the sanction of suspension or dismissal for such absences of ten or more consecutive school days. Moreover, although the emphasis in Article

XIV, dealing with evaluation procedures, is on such matters as rehiring, granting tenure or withholding of increments, nothing therein militates against the conclusion that a policy or managerial evaluation is not involved as well in determining the sanction to be imposed, including discharge, where a teacher takes an unexcused leave of absence of less than ten consecutive days in defiance of a board denial of a request therefor.

Thus, irrespective of whether a decision involving the exercise of discretion by the board in denying a leave of absence under Article VIII, ¶¶ A through H, or even ¶ I, is subject to binding arbitration as a possible violation of the contract, it is apparent that the matter of a sanction by the board for the taking of an unexcused leave of absence, despite denial of a request therefor, is to be considered under the contract as a matter of board policy and administrative decision that is not so arbitrable.

We recognize that none of the provisions we have cited is as specific as those in *Stone Harbor, supra,* which reserved to management the right to suspend, demote, discharge or take other disciplinary action for good cause according to law. Nevertheless, we are satisfied that, construed in the context of all of these provisions, as here applied ¶ K involves the exercise of policy and managerial or administrative discretion that, even as a matter of contract arbitrability, was reserved to the board and appellate review under the school laws rather than through binding arbitration.

Accordingly, as to both scope of negotiations and contract arbitrability, the issue of whether this teacher may be discharged for an unexcused absence in contravention of a board denial may not be a matter for binding arbitration.

Under the circumstances the appropriate avenue of relief for Gottesman is an appeal to the Commissioner of Education under the school laws. *See Donaldson v. North Wildwood Bd. of Ed.,* 65 *N.J.* 236, 246 (1974); *Ramapo-Indian Hills, supra.* We have been informed that such an appeal is pending with respect to her claim that she is entitled to reinstatement, a renewal of her

contract for another school year and back pay and other benefits. If necessary, the petition before the Commissioner may be amended to assert the relief claimed before the arbitrator that is the subject matter of this appeal.

The order of PERC denying a permanent restraint of arbitration, based on its finding that ¶ K relates to a term and condition of employment, *i. e.* unexcused absence or, alternatively, discipline for cause, is reversed, and arbitration is permanently restrained.