**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3684-18T3

CITY OF NEWARK,

    Plaintiff-Respondent,

v.

NEWARK SUPERIOR
OFFICERS ASSOCIATION,

    Defendant-Appellant.

_____

          Argued December 18, 2019 – Decided January 24, 2020

          Before Judges Whipple, Gooden Brown and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000037-19.

          Matthew D. Areman argued the cause for appellant (Markowitz and Richman, attorneys; Matthew D. Areman, on the briefs).

          Stacy Leigh Landau argued the cause for respondent (Carmagnola & Ritardi, LLC, attorneys; Domenick Carmagnola, of counsel and on the brief; Stacy Leigh Landau, on the brief).

PER CURIAM

On June 14, 2017, plaintiff City of Newark promulgated General Order 16-02 (Order), requiring any Newark police officer involved in a shooting or other critical incident to submit to a fitness for duty examination (FFDE). Pursuant to the grievance procedure contained in the parties' collective negotiations agreement (CNA), defendant Newark Superior Officers Association (SOA) filed a grievance against the City, alleging that the application of the Order to one of its members violated both the CNA and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111. Ultimately, the SOA initiated arbitration proceedings against the City, during which the City asserted that the grievance was not substantively arbitrable.[1] The City then filed a verified complaint and order to show cause in the Chancery Division to preclude the SOA from arbitrating both its pending grievance and future similar cases. As a result, the arbitrator deferred his ruling.

On April 8, 2019, the Chancery Division judge determined the grievance was not substantively arbitrable under the CNA, and permanently restrained

---

[1] Under Article 4 of the CNA, the parties agreed to a six-step procedure to resolve grievances, ranging from informal efforts to settle disputes to the submission of the grievance to arbitration.

A-3684-18T3

arbitration. The SOA now appeals from the April 8 order, raising the following points for our consideration:

> A. THE LOWER COURT FAILED TO LEND ADEQUATE DEFERENCE TO THE STATUTORY AND JUDICIALLY-RECOGNIZED PRESUMPTION OF ARBITRABILITY.
>
> B. THE LOWER COURT IMPROPERLY RESTRAINED ARBITRATION BASED UPON A MISAPPLICATION OF THE FACTS AND THE LAW.

After carefully reviewing the record and the governing principles, we affirm.

General Order 16-02 requires that after "a critical incident[,] the [c]ommander of the [m]edical [s]ervices [u]nit shall coordinate with the involved officer to have a psychological examination scheduled immediately with a psychologist . . . ." Under the Order, "[o]fficers involved in a . . . critical incident shall not be rearmed immediately following the incident[.]" "If the involved officer returns to duty, the officer shall be held in a restricted status until the psychological evaluation and recommendation has been completed." The term "critical incident" is defined in the Order as "[a]ny event that can cause a member of the Newark Police Division to experience an unusually strong emotional [and/]or psychological reaction[], including the use of deadly force by or against a member; accidental discharge of a weapon; and any additional

3

unusual occurrences."  The Order is intended "to minimize the chance that officers will suffer from the negative emotional and psychological reactions that can occur after the use of deadly force or the involvement in a critical incident" and "to take action . . . to safeguard the mental health of all officers."

On February 19, 2018, Sergeant Juan Gonzalez, a Newark police officer and SOA member, was involved in an on-duty shooting incident, and was ordered to undergo a FFDE pursuant to the Order.  On behalf of Gonzalez, after initial settlement efforts failed, the SOA initiated arbitration proceedings, alleging that the mandatory FFDE was violative of the ADA and provisions of the CNA.  Regarding the CNA, the SOA alleged the Order violated Article 18 applicable to "rights, privileges, and benefits" to which a SOA member is entitled, Article 19 delineating "[m]anagement [r]ights[,]" Article 20 permitting grievance of the City's "rules and regulations," Article 24 protecting officers from discrimination based on union membership, "race, color, creed, age, national origin, gender or sexual orientation[,]" and Article 29 prohibiting oral modification of the CNA, and relieving both parties of the obligation to engage in further negotiations.  During the arbitration hearing, the City countered that the arbitrator had no jurisdiction over the matter because the subject matter of the grievance was outside the provisions of the CNA.  Nonetheless, the arbitrator

began hearing testimony from witnesses before resolving the jurisdiction issue, prompting the City to file a complaint and order to show cause, seeking injunctive relief enjoining arbitration, and a declaratory judgment declaring that FFDEs ordered pursuant to the Order did not constitute grievances under the parties' CNA.

On April 8, 2019, during oral argument, the City cited "[t]he management prerogative[]" contained in Article 19 of the CNA, reserving the City's powers "to set the criteria for continued employment of [its] officers[,]"[2] and argued that

---

[2]  Article 19 states in its entirety:

> Section 1:
>
> The City hereby retains and reserves unto itself, without limitation, all powers, rights, authority, duties and responsibilities conferred upon and vested in it prior to the signing of this Agreement by the laws and Constitution of the State of New Jersey and of the United States, including but without limiting the generality of the foregoing, following rights:
>
> (a) To the executive management and administrative control of the City Government and its properties and facilities;
>
> (b) To hire all employees and subject to the provision of law, to determine their qualifications and conditions for continued

A-3684-18T3

employment, assignment, promotion and transfer;

(c) To suspend, demote, discharge or take other disciplinary action for good and just cause according to law; and

(d) To the executive management of the Police Department by economical and efficient selection, utilization, deployment and disposition of equipment, notwithstanding any other provisions of this Agreement.

## Section 2:

The exercise of the foregoing powers, rights, authority, duties or responsibilities of the City, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and discretion in connection therewith shall be limited only by the terms of this Agreement and then only to the extent such terms hereof are in conformance with the Constitution and laws of New Jersey and the United States.

## Section 3:

Nothing contained in this Article shall be construed to deny or restrict the City of its rights, responsibilities and authority under N.J.S.A. 40, 40A and 11 or any other national, state, county or local laws or ordinances.

A-3684-18T3

under the "controlling case law, . . . disputes arising out of the municipalit[y's] exercise of rights specifically reserved to it by the express agreement of the parties cannot be viewed as [subject] to the grievance procedure." The City also refuted the SOA's contention that Article 20 of the CNA applied, asserting the Order was "not a rule or regulation" subject to arbitration, but rather "a general order which [was] a distinct category."[3] Further, according to the City, because

---

[3] Article 20 provides:

> The City may establish and enforce reasonable and just rules and regulations in connection with its operation of the Department and maintenance of discipline provided such rules and regulations shall be furnished to the Association and opportunity for the discussion of the new rules and regulations shall be afforded to the Association before implementing same.
>
> It is understood that employees shall comply with all such rules and regulations. Employees shall promptly and efficiently execute the instructions and orders of officers and superiors. If an employee or employees believe a rule, regulation, instruction or order of an officer or other superior is unreasonable or unjust the employee or employees shall comply with the rule, regulation, order or instruction, but with the further provision that such employee or employees may regard the rule, regulation, order or instruction as a grievance which shall be handled in accordance with the grievance procedure set forth in Article IV of this Agreement.

A-3684-18T3

a FFDE was not specifically "addressed by other provisions in the [CNA,]" it was not subject to arbitration.

The SOA countered that pursuant to N.J.S.A. 34:13A-5.3, there was "a presumption of arbitrability between public employers and their public sector unions." The SOA asserted that "the management rights clause" of Article 19 relied on by the City "reserved" the City's rights "only to the extent it does[ not] violate the law." According to the SOA, "the application of [the Order] violate[d] the law" by violating "the ADA." The SOA also maintained that Article 20 of the CNA "authorize[d] the [SOA] to challenge 'the application or interpretation of any rule or regulation[,]'" and the application of the Order fell under the purview of that provision.

In an oral opinion, the judge ruled that the dispute was not substantively arbitrable. Thus, the judge "restrain[ed] the arbitration and issu[ed] a

---

The Association shall have the opportunity to grieve the continuation of any rule or regulation for a period of thirty (30) calendar days after the execution date of this Agreement or the promulgation of any new rule or regulation within thirty (30) calendar days after the promulgation and furnishing of same to the Association as to the reasonableness or propriety of said rule or regulation. The foregoing shall not preclude the Association from grieving the application or interpretation of any rule or regulation in accordance with Article IV.

declaratory judgment" providing that "grievances" involving officers submitting to FFDEs pursuant to the Order were "not arbitrable under the parties' [CNA]." In reaching her decision, the judge reasoned that Borough of Stone Harbor v. Wildwood Local 59, 164 N.J. Super. 375 (1978) was "exactly on point" inasmuch as "two provisions [of the CNA were] mutually repugnant" and "the parties [could not] be presumed to have intended such repugnancy."

Specifically, the judge found Articles 19 and 20 of the CNA "to be in conflict with one another." According to the judge, the provisions "must be read in a way that harmonizes the meaning of both." The judge determined that "through Article 19, the City did specifically reserve . . . its control over various personnel issues." Relying on Stone Harbor, the judge concluded that "disputes arising out of the municipalit[y's] exercise of rights specifically reserved to it by the express agreement of the parties[,]" as contained in "Article 19, Section 1b[,] cannot be viewed as subject to the grievance procedure and, hence, cannot be submitted to arbitration, the final step of that procedure." In rendering her decision, the judge rejected the SOA's contention that Article 18 "relating to the maintenance of standards, . . . Article 20 relating to rules and regulations, Article 24 regarding discrimination and coercion, and Article 29 relating to fully

bargained provisions" dictated a different result. The judge entered a memorializing order and this appeal followed.

On appeal, the SOA argues the judge "erred by disregarding the statutory and judicial presumption in favor of arbitration in labor disputes[,]" and erred in resolving the "purported conflict" between the two provisions of the CNA by giving "greater weight to one contractual provision over others[.]" According to the SOA, "[i]n the event the court perceived a conflict in the parties' agreement, it had an obligation to defer the matter" to the arbitrator for resolution of that dispute." Additionally, the SOA contends the judge's "significant reliance upon [Stone Harbor] is misplaced."

We agree that New Jersey law expressly provides public employees with a statutory and judicial presumption in favor of arbitration. N.J.S.A. 34:13A-5.3 provides, in relevant part, that when "interpreting the meaning and extent of a provision of a [CNA] providing for grievance arbitration, a court . . . shall be bound by a presumption in favor of arbitration[,]" and "[d]oubts as to the scope of an arbitration clause shall be resolved in favor of requiring arbitration." See Bd. of Educ. of Borough of Alpha, Warren Cty. v. Alpha Educ. Ass'n, 190 N.J. 34, 41-43 (2006) (acknowledging that "[a]rbitration is a favored means of resolving labor disputes."). "However, the preference for arbitration 'is not

without limits.'" Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)), and "[a]rbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014).

"Substantive arbitrability refers to 'whether the particular grievance is within the scope of the arbitration clause specifying what the parties have agreed to arbitrate.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 59 (App. Div. 2012) (quoting Standard Motor Freight, Inc. v. Local Union No. 560, 49 N.J. 83, 96 (1967)). "Issues of substantive arbitrability are . . . decided by the court[,]" rather than the arbitrator. Ibid. See also Pascack Valley Reg'l High Sch. Bd. of Educ. v. Pascack Valley Reg'l Support Staff Ass'n, 192 N.J. 489, 496-97 (2007) (explaining that substantive arbitrability is "for a court to decide"). Thus, once a court finds "the existence of an arbitration clause, a court then must evaluate whether the particular claims at issue fall within the clause's scope." Hirsch, 215 N.J. at 188.

Because "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Merrill Lynch, 427 N.J. Super. at 59 (quoting Howsam v. Dean Witter

Reynolds, 537 U.S. 79, 83 (2002)). See also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration[.]"). Therefore, "[a] court must look to the language of the arbitration clause to establish its boundaries[,]" and "may not rewrite a contract to broaden the scope of arbitration." Hirsch, 215 N.J. at 188 (first citing then quoting Garfinkel, 168 N.J. at 132).

In Stone Harbor, a union sought to arbitrate "a grievance under the collective bargaining agreement" between the union and the municipality in order to determine "the propriety of [a police officer's] discharge[.]" 164 N.J. Super. at 378-80. We reversed the trial court order denying the municipality's application for injunctive relief restraining arbitration. Id. at 382-83. We held that the parties' collective bargaining agreement did not provide for binding arbitration as a means of resolving a grievance concerning the discharge of a police officer for just cause where a "provision in the collective bargaining agreement . . . reserve[d] to management, as an essential management prerogative, the right 'to suspend, demote, discharge or take other disciplinary action for good and just cause according to law.'" Id. at 379.

We explained that

A-3684-18T3

the municipality's contractually reserved right to discipline, which includes the right of discharge for just cause, cannot realistically coexist with the agreement to submit determination of when and how that right can be exercised to binding arbitration. In our view, . . . the two provisions are mutually repugnant and the parties cannot be presumed to have intended such repugnancy. Rather the agreement must be read in a way that harmonizes the meaning of both. Hence, despite the breadth of the language of the provision describing the grievance procedure, embracing as it does "any disagreement between the [municipality] and the members of the [union] involving the interpretation, application or violation of policies, agreements and administrative decisions affecting them," those disputes arising out of the municipality's exercise of rights specifically reserved to it by the express agreement of the parties cannot be viewed as subject to the grievance procedure and hence cannot be submitted to arbitration, the final step of that procedure.

[Id. at 381.]

We reasoned that our "interpretation of the collective bargaining agreement [was] entirely consistent with a municipality's manifest responsibilities regarding the integrity and effectiveness of its local police force as reflected in our decisional law[,]" and was "in accord with normal expectations." Id. at 382. We determined that "[t]o hold otherwise would render ineffective the municipality's reserved right of discipline and would compromise the power of the municipality to control morale and insure adequate standards of safety and performance." Ibid.

13

Here, the City has a "contractually reserved right" to establish whether an officer meets "the conditions for continued employment," under Article 19, section 1(b), of the CNA in the same way that the municipality in Stone Harbor had a "contractually reserved right to discipline, which include[d] the right to discharge for just cause[.]" Id. at 381. It follows therefore that the City has the right to order a FFDE, as delineated in the Order, and this reserved right "cannot realistically coexist with the agreement to submit determination of when and how that right can be exercised to binding arbitration." Ibid. Thus, based on our de novo review, we agree with the judge that the SOA's grievance of the application of the Order is not substantively arbitrable. See Merrill Lynch, 427 N.J. Super. at 57 ("Where the issues involve contract interpretation and the application of case law to the facts of the case, the appellate court's standard of review is de novo.").

Assuming the Order is a "rule or regulation" cognizable under Article 20,[4] our interpretation harmonizes the meaning of both Articles 19 and 20, and is

---

[4] Under Article 20, the SOA is permitted to grieve any new rule or regulation promulgated by the City "within thirty . . . calendar days after the promulgation." Although the Order was promulgated by the City on June 14, 2017, the SOA did not file its grievance on behalf of Gonzalez until over a year later, on June 22, 2018. Article 20 also provides, however, that the requirement that a rule or regulation be challenged within thirty days "shall not preclude the [SOA] from

"entirely consistent with a municipality's manifest responsibilities regarding the integrity and effectiveness of its local police force as reflected in our decisional law." Stone Harbor, 164 N.J. Super. at 382. Furthermore, contrary to the SOA's contention, the judge correctly rejected its reliance on Articles 18, 24, and 29, as those provisions are inapplicable and irrelevant to the issues implicated herein. Consequently, we agree with the judge's decision to restrain arbitration of the Order's application in this case, and to enter a declaratory judgment to curb future similar arbitrations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

grieving the application or interpretation of any rule or regulation in accordance with Article [4]." Thus, while a grievance related to the Order itself is out of time, a grievance related to the application of the Order to Gonzalez is not time barred.

A-3684-18T3