176 N.J. Super. 476 (1980)
423 A.2d 998
MAINLAND REGIONAL TEACHERS ASSOCIATION, APPELLANT,
v.
BOARD OF EDUCATION OF MAINLAND REGIONAL SCHOOL DISTRICT, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1980.
Decided November 20, 1980.
*477 Before Judges BOTTER, KING and McELROY.
William S. Greenberg argued the cause for appellant (Greenberg & Mellk, attorneys; William S. Greenberg of counsel; Alan G. Kelley on the brief).
Gerard C. Gross argued the cause for respondent (Tort, Jacobs, Gross, Rosenberger & Todd, attorneys).
*478 Sidney H. Lehmann, General Counsel for Public Employment Relations Commission, filed a statement in lieu of brief (James F. Schwerin, Deputy General Counsel, on the statement).
The opinion of the court was delivered by McELROY, J.A.D.
This is an appeal by Mainland Regional Teachers Association (Association) from an order of the Public Employment Relations Commission (PERC) entered in a scope of negotiation proceedings pursuant to N.J.S.A. 34:13A-5.4(d).
In October 1978 respondent, Mainland Regional Board of Education (Board) assigned two teachers, Daniel Slattery and Melville Trempe, to perform, respectively, the co-curricular positions of Junior Class Advisor and Yearbook Co-advisor.
Co-curricular assignments of this nature had previously been made on a voluntary basis. In the 1978-79 school year there were no volunteers for these positions and the Board was obliged to designate Slattery and Trempe.[1] They refused their assignments. There being no replacements for the positions, the Board insisted that these gentlemen assume the assigned duties.
In November 1978 the Association, as collective bargaining unit for teachers at the Mainland Regional High School, filed grievances concerning the assignments. These were heard and denied by the Board.
In January 1979 the Association filed a demand for arbitration with the Board. The demand for arbitration characterized the action of the Board as one "unilaterally extending the required workday of Daniel Slattery and Melvin Trempe." The Board refused to agree to arbitrate, contending that the matter was not arbitrable.
*479 On or about April 10, 1979 the Association filed an unfair practice charge with PERC, charging that "[to] the extent that the additional extracurricular activities entail an additional amount of work hours, the Board is required to negotiate...." The Association again asserted that the Board, in assigning the two teachers to extracurricular positions, had unilaterally imposed on each of them a term and condition of employment, in violation of N.J.S.A. 34:13A-5.4(a)(5). Proceedings with respect to this unfair practice charge have been stayed by agreement of the parties pending the outcome of this appeal.
On April 30, 1979 the Board filed a petition for scope of negotiations determination with PERC. The petition sought both permanent and interim restraints of the demand for arbitration. The Board requested that PERC issue "an order determining that the matter is nonarbitrable because the assignment to cocurricular positions is solely a managerial prerogative." On May 19, 1979 PERC issued an order restraining the Association from seeking arbitration during the pendency of the proceedings.
Briefs were filed by June 25, 1979. A hearing was had on July 3, 1979 at which no verbatim record was made because the matter was viewed as one of law.
On July 5, 1979 PERC issued its order permanently restraining the Association from arbitrating or seeking to arbitrate. PERC held that the issue presented was not negotiable.
It may be seen from the foregoing that the only issue presented below was the legal issue of whether the Board could unilaterally assign Slattery and Trempe to co-curricular positions. An effect, naturally attendant to that assignment, is extension of their workday, but no proofs were submitted as to what this involved. No such proofs were necessary for the following reasons. The parties do not dispute that the compensation to be paid for these and all other extracurricular positions had already been agreed upon and made a part of the master contract governing the Board and the Association for the year in *480 question. At our request both counsel submitted copies of that contract. Part of that contract is a "Co-curricular Salary Guide" which sets a single lump sum to be paid a teacher for each extracurricular task. The agreed yearly compensation for all work to be performed by the yearbook co-advisor was $300, and $200 was the figure to compensate for all of the burdens of advisor to the junior class. The Association and the individual teachers are bound by that contract.
There was no issue presented below as to the effect of co-curricular positions upon employment hours. Slattery and Trempe necessarily had their individual work hours extended in some degree, but their Association, in their behalf, had already agreed to that extension and to its value in dollars.[2] PERC recognized that the issue of compensation for such time was not presented and correctly defined the real issue as one involving, "the Board's decision to make involuntary assignments of teachers as advisors to cocurricular activities...." PERC nevertheless viewed the matter as presenting an additional issue relating to the extension of work hours. This misapprehension may have been occasioned by a failure of the parties to inform the Commission that they had already contracted for a rate of compensation which clearly reflects and pays for the time beyond teaching hours which may, on the part of any teacher, be necessary to the performance of the assigned task.
PERC held that "Boards, thus, unilaterally can make extracurricular assignments and need not negotiate the resulting increase in work hours." For the reasons hereinafter discussed we agree that unilateral assignment of teachers to co-curricular *481 tasks is a managerial prerogative and as such not a negotiable matter. To the extent, however, that the decision below attempted to treat the question of the negotiability of attendant extended hours we hold that, in the context of this case, PERC's determination is dictum and without legal effect. We do not intend by this determination to suggest any view as to PERC's conclusion on this assumed issue. For a discussion of the question see the recent decision in Ramapo-Indian Hills Educ. Ass'n Inc. v. Ramapo Indian Hills Regional High School Dist. Bd. of Ed., 176 N.J. Super. 35 (App.Div. 1980).
We will now consider whether co-curricular assignments may unilaterally be made. In this matter the operative facts are not in dispute and PERC has primary jurisdiction to make the determination here made. State v. State Supervisory Employees Ass'n, 78 N.J. 54, 83 (1978). In such context the role of judicial review is limited and the administrative determination must stand unless it is clearly arbitrary or capricious. State v. Professional Ass'n of N.J., Dept. of Ed., 64 N.J. 231, 258 (1974).
It is settled that subject to their statutory or inherently managerial and educational prerogatives, local boards of education have the statutory responsibility of negotiating in good faith with representatives of their employees as to terms and conditions of employment, and particularly as to those matters which intimately and directly affect the work and welfare of their employees. N.J.S.A. 34:13A-5.3; Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17, 25 (1973). In Englewood Bd. of Ed. v. Englewood Teachers Ass'n, 64 N.J. 1, 7 (1973), the court observed that, "major educational policies which indirectly affect the working conditions of the teachers remain exclusively with the Board and are not negotiable whereas items which are not predominately educational policies and directly affect the financial and personal welfare of the teachers do not remain exclusively with the Board and are negotiable." Appellant contends that this case is of the latter quality. We do not agree.
*482 Extracurricular school activities are traditionally an integral part of student life intended to enrich and augment the standard curriculum. It is safe to assume that every board of education in the State maintains such programs. Activities of this nature are part of a process designed not only to educate but to develop the student into a whole person. As such they are a significant part of the duty to furnish a thorough and efficient education. In this context such activity is, perhaps, more aptly labeled co-curricular rather than extracurricular. The contract between the parties, in apparent recognition of the educational quality of such ventures, designates them as "co-curricular."
The number of such extra classroom activities, their nature and scope, and the extent to which teachers and school space shall be allocated to such undertakings as part of the learning process clearly involves educational policy and management prerogatives.
It is manifest that when a teacher is directed to oversee such an extra classroom venture the assignment has impact upon his life and upon the terms and conditions of employment. That fact alone is not, however, determinative. Recently our Supreme Court directed that where the managerial prerogatives and the terms and conditions of employment conflict, a weighing or balancing must be made. The court stated:
... When the dominant issue is an educational goal, there is no obligation to negotiate and subject the matter, including its impact to binding arbitration. Thus these matters may not be included in the negotiations and in the binding arbitration process even though they may affect or impact upon the employees' terms and conditions of employment. [Woodstown-Piles etc., Bd. Ed. v. Woodstown-Piles Ed. Ass'n, 81 N.J. 582, 591 (1980)].
In Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 156 (1978), the court reaffirmed the Dunellen and Englewood test which defined negotiable terms and conditions of employment as, "those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the *483 determination of governmental policy." Ridgefield involved the negotiability of teacher transfers and reassignments, a question similar to the issue here considered. The court held the issue nonnegotiable stating:
... The selection of the school in which a teacher works or the grade and subjects which he teaches undoubtedly have an appreciable effect on his welfare. However, even assuming that this effect could be considered direct and intimate, we find that this aspect of the transfer decision is insignificant in comparison to its relationship to the Board's managerial duty to deploy personnel in the manner which it considers most likely to promote the overall goal of providing all students with a thorough and efficient education. Thus, we find that the issue of teacher transfers is one on which negotiated agreement would significantly interfere with a public employer's discharge of inherent managerial responsibilities. Accordingly, it is not a matter to which collective negotiation is mandatory.
The same result must be reached in this case. Clearly, the decision as to which teacher is best qualified to undertake a specific kind of co-curricular student guidance and development must rest in the area of managerial prerogative. The contract between these parties in recognition of this provides that assignment of teachers is a sole right of the Board.
The Board argues that as a matter of major educational policy, the assignment of a teacher to an extracurricular position must be made by the Board after a consideration of the qualifications of any applicants and, if necessary, after a consideration of the qualifications of nonapplicants, if that be the only way to fill the position. It urges that the "Board has an obligation to provide a `thorough and efficient' education ... and the determination of what co-curricular activities will be offered from year to year must be within the prerogative of the Board, not within the whim of such teachers as may choose to apply or volunteer for those positions." We agree and hold that the impact upon terms and conditions of employment, while real, is insignificant when weighed against the Board's managerial prerogative to assign teachers in a manner consistent with its duty to provide all its students with a thorough and efficient education. This managerial decision would be significantly hindered were it to be the subject of mandatory collective negotiation.
*484 We therefore affirm that portion of the decision below which holds nonnegotiable the unilateral assignment of teachers to co-curricular positions. That part of the decision rendered below which, in the context of this case, attempts to determine the question of negotiability of hours attendant to co-curricular assignment is deemed improvidently considered and is, for the reasons herein expressed, vacated.
NOTES
[1] The Board's brief states that the yearbook has two advisors and one position was voluntarily filled.
[2] The contract provides:

This agreement incorporates the entire understanding of the parties on all matters which were or could have been the subject of negotiations. During the term of this Agreement, neither party shall be required to negotiate with respect to any such matter whether or not covered by this Agreement and whether or not within the knowledge or contemplation of either or both of the parties at the time they negotiated or executed this Agreement....