JEFFERSON TOWNSHIP BOARD OF EDUCATION, PETITIONER-
APPELLANT, v. JEFFERSON TOWNSHIP EDUCATION
ASSOCIATION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1982—Decided December 13, 1982.

Before Judges FRITZ, JOELSON and PETRELLA.

*James P. Granello* argued the cause for appellant (*Murray, Granello & Kenney,* attorneys; *David F. Corrigan* on the brief).

*Michael J. Herbert* argued the cause for respondent (*Sterns, Herbert & Weinroth,* attorneys; *Jane F. Kelly* on the brief).

Letter statement in lieu of brief filed on behalf of Public Employment Relations Commission. (*Sidney M. Lehmann,* General Counsel).

The opinion of the court was delivered by

JOELSON, J.A.D.

A school-bus driver's contract not having been renewed, Jefferson Township Education Association (Association) filed a

grievance with Jefferson Township Board of Education (Board). The grievance letter follows in pertinent part:

> Mrs. Watson [the driver] has been an active Association Representative during this past year. This may have led to some situations where there was antagonism between her and her Supervisor and the Administration. We feel that she is being disciplined to the extreme by her firing and that this is without just cause.

Board denied the grievance, whereupon Association filed a demand for arbitration of the grievance. Board then filed a scope-of-negotiations petition with the Public Employment Relations Commission (PERC) and sought to restrain arbitration of the grievance on the ground that it dealt with a disciplinary determination. PERC issued a decision finding that the "dominant issue" was the allegation of discrimination against the driver for union activity, and denying the restraint of arbitration. The PERC decision acknowledged *State v. Local 195, IFPTE,* 179 *N.J.Super.* 146 (App.Div.1981), certif. den. 89 *N.J.* 433 (1982), as holding that "the matter of the discipline of public employees is plainly a subject of essential managerial prerogative" and that the State "lacks the power and authority to negotiate binding arbitration procedures for disputes concerning disciplinary determinations." *Id.* 179 *N.J.Super.* at 152–153. However, the decision also referred to Association's argument that the holding in *Local 195* is inconsistent with the holding in *West Windsor Tp. v. PERC,* 78 *N.J.* 98 (1978). It then declined "to choose between two apparently conflicting lines of cases, as we agree with the Association that discrimination motivated by anti-union animus cannot be an inherent management prerogative pertaining to the development of governmental policy...." This is an appeal from PERC's refusal to restrain arbitration.[1] We reverse and remand.

---

[1]We denied Board's motion to stay the arbitration pending this appeal. The matter proceeded to arbitration where the arbitrator found that the nonrenewal of the driver's contract was not motivated by her union activity, but that her penalty should have been a 60-day term of disciplinary probation rather than non-renewal of her contract.

■ PERC's conclusion that these two cases are apparently in conflict is open to question. However, we need not resolve this question in view of the fact that PERC has determined that the dominant issue here is Association's charge of unfair practice on the part of Board in retaliation for union activity.[2] The question then arises as to whether, having found that the dominant issue of the grievance was the allegation of Board's discrimination against the bus driver for participation in Association activities, PERC had the authority to submit the matter to binding arbitration. We are of the opinion that because of *N.J.S.A.* 34:13A–5.4 c, it did not.

■ *N.J.S.A.* 34:13A–5.4 c expressly confers upon PERC "exclusive power" to prevent public employers and public employee organizations from engaging in any unfair practice as defined in *N.J.S.A.* 34:13A–5.4 a and b. There is no doubt that the unfair practice charged here falls squarely under subsection a, which prohibits public employers from engaging in specified unfair practices. Furthermore, *N.J.S.A.* 34:13A–5.4 c establishes precise procedures for a hearing before "the commission [PERC] or any designated agent thereof. . . .". We do not construe the words "designated agent" as conferring on PERC legislative permission to surrender its authority to an arbitrator. We regard the use of the term "designated agent" as permission for PERC to refer the matter to a duly authorized officer to conduct a hearing and collect evidence, and even perhaps to make a recommendation, subject to the ultimate responsibility of PERC itself to make the final binding decision.

It should not be disregarded that under *N.J.S.A.* 34:13A–5.4 c, the provisions of the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.,* are specifically made applicable to hearings on unfair practice charges. Sections of that act, *N.J.S.A.* 52:14B–9

---

[2]Furthermore, any question of inconsistency between the two cases will be moot in the future because on July 30, 1982 the Legislature amended *N.J.S.A.* 34:13A–5.3 to specify that disciplinary disputes are negotiable and, therefore, arbitrable. *L.* 1982, *c.* 103.

and *N.J.S.A.* 52:14B–10, establish machinery for hearings in contested cases. Clearly, a hearing by an arbitrator is not contemplated.

■ The conclusion of sole authority and responsibility in PERC to make a final and binding determination of an unfair practice charge is supported by *Hackensack v. Winner,* 82 *N.J.* 1 (1980). Although that case did not involve the question of whether PERC's exclusive power over unfair practice complaints precludes arbitration, it contains language which ineluctably leads to the conclusion of pre-emption. Thus, the court stated:

> The Legislature obviously believed that the existence or occurrence of unlawful practices called for the expert handling of a specialized administrative agency such as PERC and that in these matters that agency's jurisdiction was indeed to be preferred even to that of the courts. [at 24]

We are aware that by a 1974 amendment the following language was appended to *N.J.S.A.* 34:13A–5.3:

> Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

However, the above-quoted amendment has no impact on the outcome of this case because the collective bargaining agreement between the parties here specifically excluded from arbitration "[a]ny matter for which a specific method of review is prescribed and expressly set forth by law...." As we have already stated, *N.J.S.A.* 34:13A–5.4 c prescribes a specific method of review of unfair practice charges by means of a PERC hearing.

The decision of PERC states that although the Association couched its grievance in terms of "discipline without just cause," the dominant issue was the allegation of "discrimination for participation in Association activities...." We defer to PERC's expertise in this regard. *See Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). Having found that it was in fact dealing with an unfair practice charge, PERC should not have treated the matter as arbitrable. Our conclusion makes it unnecessary for us to consider the further question as

to whether the arbitrator exceeded his authority when, after determining adversely to the grievant the issue of anti-union animus submitted for arbitration, he nevertheless modified the penalty.

Reversed and remanded for further proceedings consistent with the foregoing.