TEANECK BOARD OF EDUCATION, RESPONDENT, v. TEANECK TEACHERS ASSOCIATION, APPELLANT.

Argued April 18, 1983—Decided July 18, 1983.

10

*Sheldon H. Pincus* argued the cause for appellant (*Bucceri & Pincus,* attorneys).

*James P. Granello* argued the cause for respondent (*Murray & Granello,* attorneys; *Robert T. Lawless,* on the brief).

*Robert E. Anderson, Jr.,* Deputy General Counsel, argued the cause for Public Employment Relations Commission.

*Susan L. Reisner,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Steven P. Weissman* submitted a brief on behalf of *amicus curiae* Communication Workers of America, AFL–CIO (*Steven P. Weissman,* attorney; *Thomas S. Adair,* a member of the Georgia bar, and *Ann F. Hoffman,* a member of the New York bar, of counsel).

*Christopher M. Howard* submitted a brief on behalf of *amicus curiae* The New Jersey State Federation of Teachers, AFT, AFL–CIO (*Sauer, Boyle, Dwyer & Canellis,* attorneys).

*Paula A. Mullaly,* General Counsel, submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Paula A. Mullaly,* attorney; *Russell Weiss,* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This appeal requires us to determine whether a teacher's claim of reverse discrimination in hiring may be submitted to binding arbitration under the terms of a collective negotiations agreement. We hold that the public employer's decision on hiring implicates an exercise of a governmental function that is not subject to binding arbitration, although it is subject to review by the Division on Civil Rights. We affirm the judgment below.

I.

The Teaneck Teachers Association filed a grievance on behalf of John A. Zubiaurre, a teacher, alleging racial discrimination in the Teaneck Board of Education's failure to appoint Zubiaurre to the position of Assistant Basketball Coach.[1] He is white and alleges that he was not appointed for that reason. The grievance was not resolved in the lower steps of the parties' collective negotiations grievance procedure. The Association sought arbitration. At a hearing before the arbitrator, the Board raised the issue of arbitrability. The arbitrator found the issue arbitrable, relying upon Article XXVI, Section A, paragraph 2 of the parties' agreement, which recites that in discharging its functions, the Board shall be "(subject, however, to the provisions of the applicable statutes and rules and regulations of the State Board of Education in such cases made and provided) and all

---

[1]Two grievances were filed that were essentially similar. For ease of reference, we refer to "the grievance."

applicable laws and decisions of any New Jersey State or applicable Federal Agency regarding these matters."

The Board challenged the arbitrability of the issue in a scope of negotiations proceeding before the Public Employment Relations Commission (PERC). PERC ruled that the disputed issue was based upon allegations of racial discrimination that were within the scope of collective negotiations and could be submitted to arbitration. On the Board's appeal, the Appellate Division ruled that the issue of racial discrimination was preempted by the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –38, and therefore was not subject to collective negotiations. 185 *N.J.Super.* 269, 276–77 (1982). Furthermore, "negotiations on hiring an assistant basketball coach would significantly interfere with [the employer's] inherent managerial prerogatives." *Id.* at 277. It concluded that any nonnegotiable subject is nonarbitrable, but the employee could pursue his grievance before another tribunal. It reversed the ruling of PERC but remanded the cause to permit transfer if requested to the Division on Civil Rights, the Superior Court, Law Division, or the Commissioner of Education, Division of Controversies and Disputes. *Id.* at 278–79. We granted the Association's petition for certification. 91 *N.J.* 569 (1982).

II.

In *Thornton v. Potamkin Chevrolet*, 94 *N.J.* 1 (1983), we reviewed the relationship between the laws against discrimination and arbitration of labor disputes in the private sector. Arbitration of labor disputes in public sector employment presents additional considerations. "We have heretofore recognized that what may be submitted to binding arbitration in the public sector is circumscribed. Unlike the private sector, prerogatives of management, particularly those involving governmental policy making, cannot be bargained away to be determined by an arbitrator." *Kearny PBA Local # 21 v. Kearny*, 81 *N.J.* 208, 215 (1979).

■ The scope of arbitrability is generally coextensive with the scope of negotiability. *Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ.,* 78 N.J. 144, 160 (1978). Thus the tests for each are nearly the same. Therefore we begin our analysis with negotiability.

■ New Jersey has only two categories of subjects of public employment negotiation: "mandatorily negotiable terms and conditions of employment" and "non-negotiable matters of governmental policy." *In re IFPTE Local 195 v. State,* 88 N.J. 393, 402 (1982). In determining those issues that cannot be bargained away, we apply the test of negotiability.

[A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. [*Id.* at 404].

The parties concede that the issue intimately and directly affects the work and welfare of public employees. The issues are whether the State's Law Against Discrimination preempts negotiation on the subject and whether arbitration of the discrimination issue would significantly interfere with the determination of governmental policy.

■ To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. *Woodstown-Pilesgrove Bd. of Educ. v. Woodstown-Pilesgrove Educ. Ass'n,* 81 N.J. 582, 591 (1980); *see also Bethlehem Tp. Bd. of Educ. v. Bethlehem Tp. Educ. Ass'n,* 91 N.J. 38 (1982); *Council of N.J. State College Locals v. State Bd. of Higher Educ.,* 91 N.J. 18 (1982).

That the State's Law Against Discrimination sets statutory terms and conditions of employment does not resolve the issue

whether application of those terms of employment to an employee is arbitrable.[2] "For example, grievances involving the application of . . . controlling statutes or regulations—which we have today held are incorporated by reference as terms of the collective agreement, *see State v. State Supervisory Employees,* [78 *N.J.* 54, 80 (1978)]—may be subjected to resolution by binding arbitration." *W. Windsor Tp. v. PERC,* 78 *N.J.* 98, 107 (1978). Thus, strictly speaking, grievance arbitration of a statutorily mandated term and condition of employment would not have the effect of establishing a provision of a negotiated agreement inconsistent with state statutory policy, an effect proscribed by *State Supervisory.* An example will suffice. If state statutes or regulations fixed hours of employment, a wage dispute centering on whether the employee worked seven or eight hours would be arbitrable since the three criteria of the *IFPTE* test would be met. The dispute implicates no managerial prerogative. *See Ramapo-Indian Hills Educ. Ass'n v. Ramapo-Indian Hills Bd. of Educ.,* 176 *N.J.Super.* 35 (App.Div.1980), certif. den., 94 *N.J.* 530 (1983) (consolidation of jobs of music teacher and band director is not arbitrable but extra pay for extra work is); *Lenk v. Monmouth Reg. H.S. Dist. Bd. of Educ.,* 1980 *S.L.D.* ____ (St.Bd.1980) (place on salary schedule adopted in accordance with law is arbitrable and collateral estoppel effect is given to arbitrator's award; no violation of statutory or decisional law asserted).

▪ But here, application of the state statute or regulation would implicate an inherent managerial prerogative. Justice Schreiber, writing for a unanimous Court in *Woodstown-Pilesgrove,* stressed that if the subject "is 'a matter of essential

---

[2]Whether and to what extent a public employment contract incorporates by reference the array of state statutes and regulations need not detain us. A statutory policy so fundamental as this would surely be one of the "applicable laws" that a public agency should follow. "Public schools and public education assuredly are covered by the anti-discrimination law." *Hinfey v. Matawan Reg. Bd. of Educ.,* 77 *N.J.* 514, 523 (1978).

managerial prerogative which has been delegated by the Legis-
lature to the Board [of Education],' it 'cannot be bargained
away.'" 81 *N.J.* at 589 (quoting *Bernards Tp. Bd. of Educ. v.
Bernards Tp. Educ. Ass'n,* 79 *N.J.* 311, 321 (1979)). The decision
to hire, retain, promote, transfer, or dismiss employees is such a
function. *IFPTE,* 88 *N.J.* at 407 (transfer); *Paterson Police
PBA Local No. 1 v. Paterson,* 87 *N.J.* 78, 98 (1981) (promote or
hire); *Ridgefield Park,* 78 *N.J.* at 156 (transfer); *Wyckoff Tp.
Bd. of Educ. v. Wyckoff Educ. Ass'n,* 168 *N.J.Super.* 497, 501
(App.Div.), certif. den., 81 *N.J.* 349 (1979) (retain); *N. Bergen
Tp. Bd. of Educ. v. N. Bergen Fed'n of Teachers,* 141 *N.J.Super.*
97, 103 (App.Div.1976) (promote or hire). The decision encom-
passes more than the consideration or not of the applicant's race.
A public employer cannot bargain away the review of a decision
whether to hire, promote, or retain teaching staff.

■ PERC recognized that its precedents were to the same
effect: that the decision to hire, promote, or replace teaching
staff members is not subject to review by an arbitrator. *In re
Mainland Reg. H.S. Dist. Bd. of Educ.,* 5 *NJPER* 301 (¶ 10162
1979), aff'd, 176 *N.J.Super.* 476 (App.Div.1980), certif. den., 87
*N.J.* 312 (1981); *In re Pascack Valley Reg. H.S. Dist. Bd. of
Educ.,* 3 *NJPER* 114 (1977). But it believed that a narrow
exception could be carved out in the field of discrimination
because, as PERC put it, "[a] decision to improperly deny an
employee an appointment because of race is not one based on a
major educational policy and therefore the submission of that
single question to an arbitrator could not interfere with the
determination of governmental policy." *See Blue Hills Reg.
Dist. School Comm. v. Flight,* 383 *Mass.* 642, 421 *N.E.2d* 755, 757
(1981) (creating an exception to the nondelegability doctrine for
impermissible discrimination; arbitrator's decision would "not
unreasonably trespass on the managerial authority of the em-
ploying agency").

The question cannot be resolved so simply without examining
the other side of the coin. *Stone Harbor v. Wildwood Local 59,*

*P.B.A.*, 164 *N.J.Super.* 375 (App.Div.1978), illustrates the problem. In that case, Judge Morgan pointed out how an arbitrator's "determination of just cause for some level of discipline is so inextricably bound into the right to discipline as to be inseparable from it." *Id.* at 381; *see also Hinfey*, 77 *N.J.* at 532–33 (referring to "educational interests of complainants, which cannot be disassociated from their discrimination grievances"). It is hard to conceive of a setting in which an aggrieved party could not assert that the employment decision was caused by the age, sex, religion or background of the employee. Adding a discrimination claim does not change the reality that the arbitrator would be reviewing the managerial decision and the agency's exercise of its functional right—not to discriminate—but to choose among qualified candidates.

In evaluating a hiring choice for bias, one must inevitably consider all other factors that motivated the decision. *See Texas Dep't of Community Affairs v. Burdine,* 450 *U.S.* 248, 101 *S.Ct.* 1089, 67 *L.Ed.2d* 207 (1981) (valid nondiscriminatory reason for employment action will rebut *prima facie* case of discrimination). Though it remains true that there is no managerial prerogative to discriminate, it is equally true that the Legislature has established the State Division on Civil Rights as generally the most appropriate forum for resolving this issue. The reasons that we outlined today in *Thornton*, 94 *N.J.* 1, for the paramount jurisdiction of the Division are equally applicable in the public sector and more appropriately applied because of the direct involvement with the governmental function of hiring.

For this reason, we agree with the Appellate Division that the matter may be referred to the Division on Civil Rights for its review and findings. Although the agency's review implicates an interference with the inherent managerial prerogatives of the public employer, the interference is mandated to fulfill governmental policy. "Matters of public policy are properly decided, not by negotiation and arbitration, but by the political process." *IFPTE,* 88 *N.J.* at 402. That process has determined

that there be review of hiring decisions for bias. In this case the proper tribunal to review the hiring decision is the Division on Civil Rights. We affirm the remand of the cause to permit transfer to that agency.[3]

## III.

That the ultimate substantive decision on hiring in public employment is not subject to binding arbitration does not mean that grievance of discrimination claims should not be encouraged. To the contrary, we agree with the proposition that grievance procedures will often provide an expedited resolution of discrimination claims and clear the air of much misunderstanding. Such proceedings are less polarized, less public and less bureaucratic in setting than a governmental forum.

Public employees of this State have a constitutional "right to organize [and] present ... grievances and proposals through representatives of their own choosing." *N.J. Const.* (1947), Art.

---

[3]The Appellate Division's judgment permitted the appellant to choose among three forums: the Division on Civil Rights, the Superior Court, Law Division, or the Commissioner of Education, Division of Controversies and Disputes. *See N.J.S.A.* 10:5–13. In some circumstances the Department of Education may be the more appropriate agency to review the employer's decision for bias. Under *Hackensack v. Winner,* 82 *N.J.* 1 (1980), if several administrative agencies have jurisdiction over a substantive issue, the accommodation of their respective interests must be resolved by a balancing test. Had there been a predominance of educational issues involved in the choice, it might have been appropriate to refer the entire dispute to the Commissioner of Education. The sole issue raised here was discrimination on account of race. For exercises of such agency jurisdiction, see *Hinfey v. Matawan Reg. Bd. of Educ.,* 77 *N.J.* 514 (1978) (discrimination in curriculum development for Commissioner of Education); *Jefferson Tp. Bd. of Educ. v. Jefferson Tp. Ed. Ass'n,* 188 *N.J.Super.* 411 (App.Div.1982); *Fair Lawn Bd. of Educ. v. Fair Lawn Educ. Ass'n,* 174 *N.J.Super.* 554 (App.Div.1980) (individual teacher's evaluation dispute before Commissioner of Education does not foreclose association's remedy of grievance arbitration of procedures used); *In re Lakewood Bd. of Educ.,* PERC No. 79–17, 4 *NJPER* 459 (¶ 4208 1978) (PERC should decide if teacher was subject of labor retaliation); *Kuc v. Hazlet Tp. Bd. of Educ.,* 1979 *S.L.D.* 1147 (St.Bd.1979) (Division on Civil Rights should decide if teachers were discriminated against on account of sex).

I, par. 19.   The Legislature defined the scope of that right in the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21.   We have repeatedly stressed the value of discussion between public employers and employees.   "[S]uch discussions are valuable and should be fostered.   They would undoubtedly promote labor peace and harmony, a major goal of the New Jersey Employer-Employee Relations Act.   *N.J.S.A.* 34:13A–2." *IFPTE,* 88 *N.J.* at 409.

In the past we have encouraged the establishment of grievance procedures for issues that will not be subject to binding arbitration.   Although the scope of arbitrability is limited by the test for negotiability, *Ridgefield Park,* 78 *N.J.* at 160 *N.J.S.A.* 34:13A–5.3 mandates the scope of matters about which public employees must be able to *present* grievances, *W. Windsor,* 78 *N.J.* at 107.   That scope is broad, exceeding the scope of issues that may be submitted to binding arbitration.

*N.J.S.A.* 34:13A–5.3 states:

> Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization.

It does not mandate arbitration as the terminal step of a grievance mechanism or any of the procedural details of the grievance procedure beyond the presentation stage.   *W. Windsor,* 78 *N.J.* at 108.   Moreover, "the scope of grievability is more expansive than the scope of negotiability," *id.* at 116–17;   the concepts are "not necessarily equal," *id.* at 107.

In *Bernards,* we suggested, in the context of disputes on the withholding of salary increments for inefficiency or other good cause, that parties consider advisory arbitration.   We stressed that such a process will have sound and beneficial results.[4]

---

[4]Nonbinding arbitration is similar to factfinding.   Bierman, "Factfinding: Finding the Public Interest," 9 *Rut.-Cam.L.J.* 667, 677 (1978).   Factfinding and

> Not only is advisory arbitration not detrimental to the public interest, its utilization may well bring about beneficial consequences. The arbitrator's findings and conclusions constitute an additional source of information for the Commissioner and will therefore assist him in carrying out his statutory responsibilities. Moreover, this additional source of information—unlike the input from the Board and the Association—will derive from a disinterested observer. The arbitrator's advisory recommendation may induce the parties to resolve their dispute without invoking the Commissioner's jurisdiction. Finally, we cannot overlook the potential favorable effects that such a procedure will have upon the morale of public employees, inasmuch as they will be permitted to present their cause—even if only as an initial matter—to an individual whom they do not consider aligned in interest with the Board. [*Id.*, 79 *N.J.* at 325–26].

The parties here did not seek or bargain for advisory arbitration. But there was a complete airing of the grievance at the Board level. These complementary grievance procedures serve the useful statutory purpose of "conference, conciliation and persuasion" mandated by *N.J.S.A.* 10:5–14 and the "conciliation conference" of *N.J.A.C.* 13:4–11.1. Even though grievance has not resolved this dispute, others may benefit from such a course.

## IV.

Summarizing our holdings in this case and in *Thornton*, 94 *N.J.* 1, we hold that (1) grievance procedures in labor agreements that permit employees to present discrimination claims in hiring are important and useful in both public and private employment; (2) in public employment, because of the inherent managerial function implicated in hiring, retaining, or replacing employees, only advisory arbitration of such claims of discrimination in employment is allowed; and (3) in either public or private employment, although of evidential value, neither failure to present nor unsuccessful prior submission of such a claim

---

mediation have been successful in resolving disputes. About 90% of cases going to factfinding are resolved. In 60 to 70% of cases going to factfinding, the factfinder's recommendations serve as a basis for settling the dispute. *Dispute Settlement in the Public Sector: The State-of-the-Art,* Report to U.S. Dep't of Labor, Div. of Public Employee Labor Relations 59–60 (T. Gilroy & A. Sinicropi eds. 1971), *excerpted in* Edwards, Clark & Craver, *Labor Relations Law in the Public Sector: Cases and Materials* 605–06 (2 ed. 1979).

to an available arbitration process will foreclose an employee's statutory right to present the claim to the State Division on Civil Rights.

The judgment of the Appellate Division is affirmed.

HANDLER, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.

HANDLER, J., concurring.

I concur in Justice O'Hern's opinion for the majority, but write separately to caution against an overly expansive interpretation of the decision. This case involves a complaint by a teacher regarding promotion and thus implicates the School Board's managerial prerogatives. Because a "public employer cannot bargain away the review of a decision whether to hire, promote, or retain teaching staff," *ante* at 16, the Board is prohibited from establishing binding arbitration on matters of hiring and promotion. As a result, the complaint of racial discrimination forwarded in this case must be brought before the Division of Civil Rights, which is statutorily authorized to review such disputes.

I wish to emphasize, however, that this analysis would not apply in instances where the discrimination complaint relates to the terms or conditions of employment, rather than an inherent managerial prerogative. Because a school board could validly establish an arbitration mechanism through a collective negotiation agreement to hear these types of job complaints, we would be required to determine the interrelationship between this type of arbitration proceeding and the statutory vehicle established to address violations of the Law Against Discrimination, *N.J. S.A.* 10:5–1 to –38. In making such a determination, we would have to balance several factors that are not involved in today's

decision. First, we would have to recognize that the Legislature has established specific procedures within the Law Against Discrimination for the resolution of employment discrimination grievances. *N.J.S.A.* 10:5–6 (establishment of a Division on Civil Rights within the Department of Law and Public Safety); *N.J.S.A.* 10:5–13 to –16, (procedures regulating receipt, investigation and hearing of complaints of discrimination); *N.J.S.A.* 10:5–17 (empowering agency to order any employer to cease and desist from engaging in illegal employment practices and to take such affirmative actions including hiring, reinstatement or upgrading of employees, with or without back pay, as will effectuate the purposes of the act).

We would also need to compare the nature of the rights against discrimination contained in the statute and the employment contract and the remedies available to vindicate these rights. In addition, we would need to determine the manner in which the statutory "policy favoring arbitration of labor disputes and the ... policy against discriminatory employment practices can best be accommodated ..." *Thornton v. Potamkin Chevrolet,* 94 *N.J.* 1, 6 (slip op. at 6–7) (1983) (quoting *Alexander v. Gardner-Denver,* 415 *U.S.* 36, 59, 94 *S.Ct.* 1011, 1025, 39 *L.Ed.2d* 147, 164–65 (1974)). Finally we would need to determine the proper scope of *N.J.S.A.* 34:13A–5.3, as recently amended by the Legislature. *L.*1982, *c.* 103, § 1. It reads

grievance and disciplinary review procedures may provide for binding arbitration as a means for resolving disputes. The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws. Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

I do not seek to suggest a particular resolution of this question, but only wish to stress that the matter is left unresolved by the Court's opinion. Due to the scope of today's decision, the interrelationship between arbitration procedures for the resolution of complaints of discrimination in the terms and conditions

of employment and the procedures established by the Law Against Discrimination remains an open question.