**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1219-24

IN THE MATTER OF
TOWNSHIP OF MOUNT
OLIVE AND FOP LODGE 122.

_____

Argued on October 1, 2025 – Decided October 31, 2025

Before Judges Mayer and Vanek.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2025-16.

Adam S. Abramson-Schneider argued the cause for appellant Township of Mount Olive (Cleary Giacobbe Alfieri & Jacobs LLC, attorneys; Adam S. Abramson-Schneider, of counsel; Anthony G. LoBrace on the briefs).

Nicholas Poberezhsky argued the cause for respondent FOP Lodge 122 (Caruso Smith Picini, PC, attorneys; Nicholas Poberezhsky, of counsel and on the brief).

William J. Campbell, IV, Deputy General Counsel, argued the cause for respondent New Jersey Public Employees Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; Willam J. Campbell, IV, on the brief).

PER CURIAM

The Township of Mount Olive (Township) appeals from a final agency decision (FAD) of the Public Employment Relations Commission (PERC) denying its petition to restrain binding arbitration of a grievance contesting the removal of the corporal designation for Patrol Officer Thomas Cuff (Cuff). We affirm.

I.

The Fraternal Order Police Lodge 122 (FOP) is the collective negotiations representative for the Township's patrol officers and sergeants. The Township and the FOP entered into a Collective Negotiations Agreement (CNA), which designated binding arbitration pursuant to N.J.S.A. 34:13A-5.3 as the exclusive grievance procedure to resolve disputes arising from the interpretation or application of the CNA and the Township's Police Department Rules and Regulations (Regulations).

The Regulations define "corporal" as:

> [a]n officer assigned by the Chief of Police to supervise a squad or unit in the absence of a sergeant. This absence is not limited to scheduled days off or vacation[] but may also include times where a [s]ergeant is unable to assist due to a meeting, prior assignment, or previous call for service.

2

When officers designated as corporals are not working as "acting sergeant" or "officer in charge," their job duties remain those of a patrol officer. Neither the Township's Municipal Code nor its Regulations include the corporal designation as a rank in the chain-of-command. Mount Olive, N.J., Code § 68-2.[1]

Article XV of the CNA allows the Township to "promote, assign and transfer employees and determine manning requirements" and "[t]he authority to take disciplinary actions as necessary." Article II states police officers performing in an acting role "receive the salary rate applicable to the higher classification for the duration of the period said employee performs the duties of the higher classification."

In 2016, the Township's then-Chief of Police Stephen Beecher (Beecher) designated Cuff as a corporal. On August 26, 2021, the Township issued Cuff a Notice of Disciplinary Action (NDA) charging him with the following violations:

> [1] 3:1.11 – Performance of duty
> [2] 3.1.13 – Obedience to Laws and regulations
> [3] 3.1.35 – Civil Rights
> [4] 3.2.35 – All other Conduct
> [5] MOPD SOP V07c03 – Arrest and Transportation

---

[1] Under Mount Olive, N.J., Code § 68-2: "The [Township] shall consist of no more than a Chief of Police, and one Captain, four Lieutenants, [ten] Sergeants, and a maximum of [fifty] police officers, to be appointed to these positions by the Chief of Police. . . ."

[6] MOPD SOP V07c01 – Search and Seizure
[7] MOPD SOP V02c13 – PTL. Responsibilities
[8] N.J.S.A. 40A: 14-147 Misconduct

As part of the NDA, the Township sought a sixteen-hour suspension and "Other Disciplinary Action," including the removal of the corporal designation and remedial training in domestic violence and arrest, search and seizure. The same day, Beecher issued a personnel order removing Cuff's corporal designation.

Cuff then filed an Order to Show Cause (OTSC) in the Law Division seeking temporary restraints restoring his corporal designation until a hearing took place and declaring the Township's removal of Cuff's corporal designation unlawful. The judge found "Cuff's reassignment from a temporary position [did] not appear to be the type of discipline contemplated by . . . [PERC] or the New Jersey [c]ourts, requiring a pre-deprivation hearing." The judge denied the OTSC, finding Cuff failed to demonstrate the Crowe[2] factors by clear and convincing evidence.

The FOP then filed a grievance seeking arbitration of the discipline sought in the NDA. Hearing Officer Raymond J. Hayducka, Jr. (the Hearing Officer) presided over Cuff's disciplinary hearing. After considering the parties' submissions, the Hearing Officer found the proofs established the NDA

---

[2] Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982).

stemmed from an incident on January 3, 2021, involving Cuff (the 2021 incident).

At the disciplinary hearing, Beecher testified his decision to remove Cuff's corporal designation and to require remedial training was not disciplinary even though he listed it in the NDA under "Other Discipline." Beecher explained he included the "Other Discipline" section in the NDA as part of his managerial prerogative to take such actions. Yet, Beecher also testified Cuff's role in the 2021 incident "play[ed] into" his decision, along with Cuff's previous seventy-two-hour suspension for misusing a mobile data system and Cuff's statement during the internal affairs (IA) investigation stemming from the 2021 incident. According to Beecher, these incidents revealed Cuff did not understand certain arrest guidelines.

The Hearing Officer found Cuff guilty on all charges and recommended a sixteen-hour suspension in a non-binding, written decision. The Hearing Officer's decision did not address the "Other Discipline" sought in the NDA and stated Beecher "only sought a [sixteen-hour] penalty."

The Township and the FOP filed a joint Request for Submission to a Panel of Arbitrators. After the first day of arbitration, the Township filed a Scope of Negotiations Petition (Petition) with PERC, seeking to restrain arbitration

A-1219-24

regarding Cuff's "removal from an assignment" and asserting "the selection and removal of personnel from assignments [were] within the managerial prerogative of the Township."

PERC rejected the FOP's argument that the Petition was untimely because "[PERC] has a longstanding policy allowing for the filing of scope of negotiation petitions until an arbitration award is issued." The Township filed the Petition one day after arbitration began. PERC further found the corporal designation was not an "assignment" because "[t]he [c]orporal designation is not a promotional position or title"; "[c]orporals do not receive a higher rate of pay[] or perform substantially different work from [ordinary] police officers"; the corporal's sole function is to "assume the role of [a]cting [s]ergeant when a [s]ergeant is unavailable to perform their duties"; and the "[c]orporal designation allows for temporary assignment as an [a]cting [s]ergeant and earning a shift differential." PERC relied in part on Cuff's certification asserting he was never "assigned" as a corporal but instead received the corporal "distinction," which included the ability to wear corporal stripes and to be assigned as acting sergeant, earning a shift differential.

While PERC acknowledged "[t]he record indicate[d] some operational justification for [Beecher's] decision to rescind [Cuff's] [c]orporal designation,"

6

it found the temporal aspect of Beecher's decision "weigh[ed] strongly in favor of a finding that the recission of the [c]orporal designation was disciplinary." PERC concluded Beecher's decision was "[o]n balance . . . predominantly disciplinary" in nature and, therefore, "legally arbitrable."

The Township's appeal followed.

II.

Our review is guided by well-established legal principles. In adopting the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -64, the Legislature recognized public employees' "legitimate interest in engaging in collective negotiations about issues that affect 'terms and conditions of employment.'" In re Loc. 195, IFPTE, 88 N.J. 393, 401 (1982) (quoting N.J.S.A. 34:13A-5.3). PERC is charged with administering and interpreting the EERA. State, Div. of State Police v. N.J. State Trooper Captains Ass'n, 441 N.J. Super. 55, 63 (App. Div. 2015). Accordingly, PERC has "primary jurisdiction pursuant to [the EERA] 'to determine in the first instance whether a matter in dispute is within the scope of collective negotiations.'" Rozenblit v. Lyles, 245 N.J. 105, 122 n.2 (2021) (quoting In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16 (2020)).

7

PERC's decision is subject to our review on appeal. Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 614 (2020) (citing N.J.S.A. 34:13A-5.4(d)). However, our Supreme Court has long recognized the legislative "mandate[] that judicial review of PERC's decisions and orders shall be of a very limited scope." Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n, 78 N.J. 25, 35 (1978); In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 400 (App. Div. 2018) (citing City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567-68 (1998)). Thus, "PERC's interpretation of the EERA is . . . entitled to substantial deference," Belleville Educ. Ass'n, 455 N.J. Super. at 398, and we will not disturb its determination "unless [PERC's] decision is shown to be arbitrary, capricious, or unreasonable, lacking fair support in the evidence, or violative of a legislative policy expressed or implicit in the governing statute." In re County of Atlantic, 445 N.J. Super. 1, 21 (App. Div. 2016).

III.

A.

We are unpersuaded by the FOP's contention that the Township waived its right to file the Petition by proceeding to arbitration.

N.J.A.C. 19:13-2.1 specifies that scope of negotiation proceedings are

initiated by filing a petition with PERC.  Although the preferred procedure is to seek a scope determination from PERC before attending arbitration, a party is not required to do so under the EERA.  Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154 (1978); see also N.J.S.A. 19:13-1.1.  Thus, PERC's acceptance of the Petition after the first day of arbitration was not arbitrary and capricious.

We disagree the Supreme Court's holding in Township of Teaneck v. Teaneck Firemen's Mutual Benevolent Ass'n Local No. 42, 353 N.J. Super. 289, 299 (App. Div. 2002), aff'd, 177 N.J. 560 (2003), compels a contrary result.  Unlike this case, which involves grievance arbitration under the EERA, Township of Teaneck involved compulsory interest arbitration under the Police and Fire Public Interest Arbitration Reform Act, N.J.S.A. 34:13A-14a to -16.6, with an accompanying regulation stating:  "[t]he failure to file a request for a scope determination . . . shall be deemed a waiver of the negotiability objection."  N.J.A.C. 19:16-5.5(c).  Because PERC has not adopted a comparable regulation under the EERA, we are unpersuaded the rationale in Township of Teaneck barred PERC from considering the Petition.

B.

The Township asserts the removal of Cuff's corporal designation

9

constitutes a non-arbitrable "reassignment," regardless of whether it was disciplinary. In the alternative, the Township argues PERC's finding that the removal of Cuff's corporal designation was predominantly disciplinary was not supported by substantial, credible evidence in the record. We are unpersuaded by either argument.

We recognize the issues that "may be submitted to binding arbitration in the public sector [are] circumscribed." Teaneck Bd. of Educ. v. Teaneck Tchrs. Ass'n, 94 N.J. 9, 13 (1983) (quoting Kearny PBA Loc. #21 v. Kearny, 81 N.J. 208, 215 (1979)). "[T]he scope of public employment negotiation is divided, for purposes of analysis, into two categories of subject matter comprised of mandatorily negotiable subjects and non-negotiable matters of governmental policy." Robbinsville Twp. Bd. of Educ. v. Wash. Twp. Educ. Ass'n, 227 N.J. 192, 198 (2016).

"To be arbitrable, a matter must qualify as one on which the parties may negotiate. A matter which is not legally negotiable in the first place cannot be arbitrable." Ridgefield Park, 78 N.J. at 160. As a result, "[t]he scope of arbitrability is generally coextensive with the scope of negotiability." Teaneck Bd. of Educ., 94 N.J. at 14 (citing Ridgefield Park, 78 N.J. at 160).

The "time-honored test" for determining if an issue is negotiable requires

that "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy."  Robbinsville Twp. Bd. of Educ., 227 N.J. at 199 (quoting In re Loc. 195, IFPTE, 88 N.J. at 404).  This is because, in the public sector, "prerogatives of management, particularly those involving governmental policy making, cannot be bargained away to be determined by an arbitrator."  Kearny, 81 N.J. at 215.

To determine "whether a negotiated agreement would significantly interfere with the determination of governmental policy," PERC must "balance the interests of the public employees and the public employer."  In re Loc. 195, IFPTE, 88 N.J. at 405.  This "weighing or balancing" informs whether the "dominant issue" concerns the exercise of a non-negotiable managerial prerogative.  Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n, 81 N.J. 582, 591 (1980).

i.

We are unconvinced by the Township's argument that PERC's prior decisions deeming certain police officer transfers or reassignments non-

arbitrable compels reversal here based on PERC's factual findings regarding the corporal designation.

We defer to PERC's factual findings as substantiated by credible evidence in the record. PERC considered evidence beyond arguments raised by the Township and the FOP in finding the underlying facts evinced the corporal designation did not constitute an assignment. PERC found that once Cuff was designated a corporal, Beecher made periodic temporary assignments of Cuff to "acting sergeant" duties on a situational basis. PERC reasoned the temporary nature of the corporal designation, and the lack of the designation being a recognized promotional rank, warranted a finding that the designation was not an "assignment."

We discern no error with PERC's factual finding that Cuff's corporal designation made him eligible for further, specific assignment by the Chief, but the distinction itself did not constitute a non-arbitrable issue. Unlike the facts in cases before PERC in prior matters, and in considering the record here, PERC found the corporal distinction did not result in any changes to Cuff's work location, job duties, salary, and benefits, and he did not receive a new or updated employment contract. PERC further found the primary benefit associated with

Cuff's corporal designation was his subsequent, situational assignments as acting sergeant, which afforded him a pay differential.

We are satisfied PERC's distinguishing of the removal of Cuff's corporal designation from the reassignments at issue in N.J. Transit Corp. and Town of Hammonton was proper because those cases involved placement at a particular event or establishment or to a particular program. Town of Hammonton, P.E.R.C. No. 2011-50, 37 N.J.P.E.R. ¶ 14, 2010 NJ PERC LEXIS 305, at *11 (2010); N.J. Transit Corp., P.E.R.C. 2006 NJ PERC LEXIS 141, at *8-9. The record is replete with examples of PERC's prior decisions finding police officer reassignments non-arbitrable in circumstances distinguishable from the rescission of Cuff's corporal designation at issue here. See, e.g., Borough of New Milford, P.E.R.C. No. 99-43, 25 N.J.P.E.R. ¶ 30003, 1998 PERC LEXIS 205 (1998) (finding reassignment of an officer from the detective bureau to the patrol division non-arbitrable); In re City of Jersey City, P.E.R.C. No. 2006-29, 31 N.J.P.E.R. ¶ 133, 2005 NJ PERC LEXIS 157 (2005) (finding a non-disciplinary transfer based on an officer's qualifications non-arbitrable); In re City of Elizabeth, P.E.R.C. No. 2019-53, 46 N.J.P.E.R. ¶ 3, 2019 NJ PERC LEXIS 57 (2019) (finding reassignment of an officer from regular duty to "radio room duty" non-arbitrable); In re City of Vineland, P.E.R.C. No. 2013-37, 39

N.J.P.E.R. ¶ 74, 2012 NJ PERC LEXIS 90 (2012) (finding decision to limit overtime to certain juvenile bureau detectives non-arbitrable); In re N.J. Transit Corp., P.E.R.C. No. 2006-54, 32 N.J.P.E.R. ¶ 9, 2006 NJ PERC LEXIS 141 (2006) (finding officers taken from a "Field Training Program" without explanation non-arbitrable but the procedure utilized was); Township of Wayne, P.E.R.C. No. 92-60, 18 N.J.P.E.R. ¶ 20016, 1991 NJ PERC LEXIS 322 (1991) (restraining arbitration of a grievance contesting a transfer of detectives); State v. State Troopers Fraternal Ass'n, 134 N.J. 393 (1993) (finding major discipline of a state trooper was a managerial prerogative).

ii.

The Township also argues PERC's finding that the removal of Cuff's corporal designation was "[o]n balance . . . predominantly disciplinary" lacked support in the record. We are unconvinced.

Here, PERC engaged in the analysis required under In re Local 195, IFPTE, weighing the competing interests presented by the grievance and determining "on balance" Beecher's decision "predominantly involved a form of discipline triggering the application of [the EERA]." 88 N.J. at 404-05.

PERC has synthesized its prior decisions weighing the "predominantly disciplinary" issue as follows:

Our case law does not establish a bright line test for assessing whether a [public employer's action] is disciplinary. . . . But read together, our decisions indicate that we have found [such actions] to be disciplinary where they were triggered by an incident for which the employee was also reprimanded or otherwise disciplined or were closely related in time to an alleged incident of misconduct. In all of these cases, we noted that the employer did not explain how the [action] furthered its . . . operational needs.

By contrast, we have found [public employer actions] not to be disciplinary where they were effected predominantly to further an employer's educational, operational, or staffing objectives.

Other of our cases have found that [public employer actions] effected because of concern about an employee's poor performance of core job duties – as opposed to concerns about absenteeism or violation of administrative procedures – were not disciplinary but instead implicated the employer's right to assign . . . employees based on their qualifications and abilities.

[In re Old Bridge Twp. Bd. of Educ., P.E.R.C. No. 2005-64, 31 N.J.P.E.R. ¶ 49, 2005 NJ PERC LEXIS 96, at *7-8 (2005) (quoting In re W. N.Y. Bd. of Educ., P.E.R.C. No. 2001-41, 27 N.J.P.E.R. ¶ 32037, 2001 NJ PERC LEXIS 48, at *11-13 (2001)).]

PERC has reasoned it "consider[s] such factors as whether [an employer's action] was intended to accomplish . . . staffing[] or operational objectives; whether the [employer] has explained how the [action] was so linked; and whether the employee was reprimanded for any conduct or incident which

15

prompted the [action]." Id. at \*8 (quoting W. N.Y., 2001 NJ PERC LEXIS 48, at \*14). E.g. City of Atlantic City, P.E.R.C. No. 87-161, 13 N.J.P.E.R. ¶18, 1987 NJ PERC LEXIS 310, at \*7-9 (1987) (restraining arbitration when finding the evidence did not substantiate a reassignment from patrol to internal security duties was predominantly disciplinary).

We discern no error in PERC's finding that Beecher's decision to remove Cuff's corporal designation was predominantly disciplinary, because it is supported by sufficient, credible, and competent evidence in the record. PERC found Cuff's designation was "rescinded as part of the [NDA]" addressing Cuff's actions during the January 2021 incident and was "included as part of the disciplinary action taken against [Cuff]." In considering Beecher's testimony, PERC determined the removal was "triggered by an incident for which [Cuff] was also reprimanded or otherwise disciplined" and was "closely related in time to an alleged incident of misconduct." Old Bridge Twp. Bd. of Educ., 2005 NJ PERC LEXIS 96, at \*7 (quoting W. N.Y., 2001 NJ PERC LEXIS 48, at \*11). While Beecher's decision was six months after the incident, it followed the IA investigation—thus making the decision "closely related in time." Ibid.

PERC considered Beecher's countervailing testimony, finding the "record indicate[d] some operational justification for [Beecher's] decision to rescind

A-1219-24

[Cuff's] [c]orporal designation." That PERC did not weigh the evidence presented in the way the Township prefers does not warrant reversal of PERC's decision. Because PERC's finding was "reasonably . . . reached on sufficient[,] credible evidence present in the record[,] considering the proofs as a whole," In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)), we decline to disturb the FAD deeming the rescission of Cuff's corporal designation predominantly disciplinary and arbitrable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1219-24