757 A.2d 311 (2000)
334 N.J. Super. 162
JACKSON TOWNSHIP BOARD OF EDUCATION, Petitioner-Appellant,
v.
JACKSON EDUCATION ASSOCIATION on behalf of James SCELBA, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 2000.
Decided August 1, 2000.
*312 Francis J. Campbell, Neptune, argued the cause for appellant (Kalac, Newman, Lavender & Campbell, attorneys; Mr. Campbell, on the brief).
Brent D. Miller argued the cause for respondent (Starkey, Kelly, Blaney & White, Toms River, attorneys; Mr. Miller, on the brief).
Robert E. Anderson, General Counsel, argued the cause for the Public Employment Relations Commission.
New Jersey School Boards Association filed an amicus curiae brief (Cynthia J. Jahn, Milford, of counsel; Monica Dodd Palestis, Newark, on the brief).
New Jersey Association of School Administrators filed an amicus curiae brief (Melissa Vance Kirsch, Trenton, on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
The Jackson Township Board of Education (Board) appeals from a scope of negotiations determination by the Public Employment Relations Commission (PERC) which declared as arbitrable a grievance filed by the Jackson Education Association (JEA) on behalf of James Scelba. We affirm.
At the time of the events at issue, Scelba had been employed as a teacher in the Jackson School District for about twenty-five years. He had served as coach and head coach of the high school golf team for nearly twenty of those years. On June 2, 1998, Ralph Carretta, the Director of Athletics, informed Scelba that his separate contract for the extracurricular coaching position would not be renewed for the following school year.
At Scelba's request, Carretta confirmed this communication in writing with the reasons for his decision. In a memorandum dated June 15, Carretta stated that Scelba had "not been offered the Varsity Head *313 Golf Coach for not reaching your goals of 1997 ... as set out in your 1997 evaluation." Those goals were:
1. Mr. Scelba should have "get togethers" at least 1 or 2 nights a week during the summer.
2. Start middle school golf "clubs".
3. Sign students up for adult school golf clinics.
4. Run golf tournament for fundraiser.
Subsequently, the Superintendent of Schools sent the Board a memorandum stating his reasons for declining to recommend a renewal of Scelba's coaching contract. By memorandum dated July 17, the Superintendent advised Scelba that the Superintendent's determination was based upon Scelba's "failure to achieve the goals set for you by ... Carretta ... over the past three years." Scelba requested a Donaldson[*] "hearing", and appeared before the Board with JEA representatives and others. After considering statements made and documents submitted in support of Scelba's reappointment, the Board determined to follow the Superintendent's recommendation and appointed another staff member to the coaching position.
On Scelba's behalf, the JEA invoked the grievance procedure in its contract with the Board, contending that the "disciplinary removal" of Scelba from the coaching position violated several enumerated provisions of the contract. The grievance was denied at the first three, local, steps. The JEA then filed a request with PERC that the matter be submitted to arbitration, the final step of the contractual grievance procedure.
At about the same time, a petition was filed with the Commissioner of Education, seeking Selba's reinstatement as golf coach on the ground that the Board had failed to provide the written notice and statement of reasons required by law. At the time the briefs in this appeal were filed that matter was still pending.
In response to the JEA's request for arbitration, the Board filed a scope-of-negotiations petition with PERC, seeking to restrain the arbitration on the ground that N.J.S.A. 18A:27-4.1, enacted in 1995, had placed disputes such as the instant matter outside the scope of negotiations.
PERC ruled that N.J.S.A. 18A:27-4.1 did not repeal or otherwise affect N.J.S.A. 34:13A-23, a 1990 amendment to the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -30. The 1990 amendment classified disputes over extracurricular assignments as subject to negotiation and, hence, to arbitration if that was a procedure agreed to by the parties. Accordingly, PERC refused to restrain the arbitration, engendering this appeal by the Board.
In addition to the parties' briefs, we have, pursuant to leave granted, received briefs from two amici curiae, the New Jersey School Boards Association and the New Jersey Association of School Administrators, supporting the Board's position. PERC has filed a brief in support of its own decision.
The Board and amici argue that the 1995 enactment of N.J.S.A. 18A:27-4.1 effectively repealed or pre-empted N.J.S.A. 34:13A-23, enacted some five years earlier, at least to the extent the provisions are operationally in conflict. The newer statute provides in pertinent part:
Notwithstanding the provisions of any law, rule or regulation to the contrary,
a. A board of education shall appoint, transfer or remove a certificated or non-certificated officer or employee only upon the recommendation of the chief school administrator and by a recorded roll call majority vote of the full membership of the board. The board *314 shall not withhold its approval for arbitrary and capricious reasons.
b. A board of education shall renew the employment contract of a certificated or non-certificated officer or employee only upon the recommendation of the chief administrator and by a recorded roll call majority vote of the full membership of the board. The board shall not withhold its approval for arbitrary and capricious reasons. A nontenured officer or employee who is not recommended for renewal by the chief school administrator shall be deemed nonrenewed. Prior to notifying the officer or employee of the nonrenewal, the chief school administrator shall notify the board of the recommendation not to renew the officer's or employee's contract and the reasons for the recommendation. An officer or employee whose employment contract is not renewed shall have the right to a written statement of reasons for nonrenewal ... and to an informal appearance before the board. The purpose of the appearance shall be to permit the staff member to convince the members of the board to offer reemployment. The chief school administrator shall notify the officer or employee of the nonrenewal....

[N.J.S.A. 18A:27-4.1.]
According to the Sponsor's Statement to S. 1461, the original version of the bill that, after various changes, was eventually enacted as N.J.S.A. 18A:27-4.1, the provision was designed to correct the law in the face of our decision in Rotondo v. Carlstadt-East Rutherford Regional High School Dist. 276 N.J.Super. 36, 647 A.2d 174 (App.Div.1994).
In Rotondo, the chief school administrator (CSA) had recommended to the board of education that a non-tenured music teacher's contract not be renewed. The board renewed the contract despite the recommendation. The Commissioner of Education and the State Board of Education ruled that the local board had no power to employ a teacher who was not recommended by the CSA.
We reversed, relying on N.J.S.A. 18A:27-1: "No teaching staff member shall be appointed, except by a recorded roll call majority vote of the full membership of the board of education appointing him." We observed that nothing in that or any other statute "affords the CSA a veto or other controlling role in the process of appointing teaching staff members." Rotondo, supra, 276 N.J.Super. at 39, 647 A.2d 174. We could discern no statutory "hint that the local board's authority to appoint is restricted to persons sponsored by the CSA." Id. at 44-45, 647 A.2d 174 (footnote omitted). Our opinion closed by referring to the Legislature's prerogatives in establishing educational policy, and invited clarifying legislation if we had misperceived the Legislature's intent. Id. at 46, 647 A.2d 174.
The enactment of N.J.S.A. 18A:27-4.1 was the result. By its terms, the statute provides, inter alia, that a board may renew an employee's contract "only" if the CSA so recommends, and that it may decline to follow a CSA's recommendation for renewal but may not do so arbitrarily and capriciously. N.J.S.A. 18A:27-4.1b. Although the statute speaks in terms of renewal of an employee's "employment contract," it is undisputed that it applies not only to teachers' regular duties but also to extracurricular assignments.
Previously, in 1990, the Legislature had enacted a statute also designed to correct a line of judicial decisions, some cases interpreting and applying the negotiability standards of the New Jersey Employer-Employee Relations Act. As a result of the Supreme Court's holding in In re Local 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 404-05, 443 A.2d 187 (1982), it had become established that appointments to and removals from extracurricular positions in public schools lay on the managerial-prerogative side of the negotiability divide and were, therefore, not subject to collective negotiations (or, hence, arbitrable). *315 See Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n, 94 N.J. 9, 13-16, 462 A.2d 137 (1983); Mainland Regional Teachers Ass'n v. Bd. of Educ. of Mainland Regional School District, 176 N.J.Super. 476, 483, 423 A.2d 998 (App.Div.1980), certif. denied, 87 N.J. 312, 434 A.2d 66 (1981).
It is undisputed that N.J.S.A. 34:13A-23 changed that rule, classifying issues bearing upon extracurricular assignments as mandatorily negotiable. That statute provides, in pertinent part:
All aspects of assignment to[,] retention in, dismissal from, and any terms and conditions of employment concerning extracurricular activities shall be deemed mandatory subjects for collective negotiations between an employer and the majority representative of the employees in a collective bargaining unit, except that the establishment of qualifications for such positions shall not constitute a mandatory subject for negotiations.
It is also undisputed that this provision encompassed non-renewals of extracurricular assignments, and that PERC has uniformly held it to allow parties to agree to arbitrate such controversies. The Board concedes that, but for N.J.S.A. 18A:27-4.1, this dispute indeed would be arbitrable by reason of N.J.S.A. 34:13A-23. It contends, however, that that outcome was precluded by the enactment of N.J.S.A. 18A:27-4.1.
The Board argued before PERC, as it does on appeal, that N.J.S.A. 18A:27-4.1 preempts the arbitration otherwise allowed by N.J.S.A. 34:13A-23, reasoning that because "only" the CSA may authorize renewals, that power would be diluted, if not eviscerated, were an arbitrator permitted to review a non-renewal action.
PERC rejected the Board's theory, holding that "N.J.S.A. 18A:27-4.1 does not supersede N.J.S.A. 34:13A-23 or preclude school boards from agreeing to submit extracurricular appointment and retention disputes to binding arbitration." Analyzing the language of the 1995 statute together with its purpose to clarify the law after Rotondo, PERC concluded "that N.J.S.A. 18A:27-4.1 addresses only the education-law requirements for making non-renewal and other employment decisions and was not intended to alter the pre-1995 legal framework for determining whether such decisions, once made, may be submitted to binding arbitration."
PERC also rejected the Board's argument that a general education law, applying to all personnel decisions in a school district, should be construed as repealing a section of the New Jersey Employer-Employee Relations Act that covers the dispute at issue specifically. PERC observed that, "in adopting N.J.S.A. 18A:27-4.1, the Legislature was focused not on the arbitrability of extracurricular non-renewal decisions but on the respective roles of the board and the chief school administrator in making employment decisions."
The Board had stressed the introductory language to N.J.S.A. 18A:27-4.1, "[n]otwithstanding the provisions of any law, rule or regulation to the contrary," as language of preemption or repeal. PERC opined: "We believe it more likely that that language was included in light of the continued existence of N.J.S.A. 18A:27-1, on which the Rotondo court had relied." PERC reasoned, therefore, that "the two statutes can be construed together sensibly and harmoniously." It observed the net effect of the interaction of the two provisions to be that "disputes subject to arbitration under N.J.S.A. 34:13A-23 will involve the chief school administrator's decision rather than the board's. [sic]"
In interpreting N.J.S.A. 18A:27-4.1, PERC relied heavily on a decision of the State Board of Education holding that where the CSA has recommended non-renewal and the employee has requested a chance to appear before the board to convince it to offer renewal (as permitted by N.J.S.A. 18A:27-4.1b), the board has the authority to renew in spite of the CSA's recommendation. In the light of the State *316 Board's interpretation of N.J.S.A. 18A:27-4.1, PERC reasoned:
Even were we to accept the Board's theory that binding arbitration of a coaching non-renewal is inconsistent with a requirement that the chief school administrator recommend an individual for renewal, that theory would not pertain here, where, under the gloss which the State Board has placed on N.J.S.A. 18A:27-4.1, the Board did have the authority to renew Scelba's coaching contract without the chief school administrator's recommendation.
After considering the written and oral arguments of the parties we are persuaded, on several grounds, that PERC's reasoning was correct. We begin with two general propositions.
First, courts are obliged, where possible, to bring harmony to the construal of two or more legislative enactments bearing upon the same subject matter. Reuben H. Donnelley Corp. v. Division of Taxation, 128 N.J. 218, 227, 607 A.2d 1281 (1992) (quoting Superior Air Prods. Co. v. NL Indus., 216 N.J.Super. 46, 63-64, 522 A.2d 1025 (App.Div.1987)). That duty has been invoked specifically with respect to the education laws, Title 18A, and the New Jersey Employer-Employee Relations Act. They are "generally ... in pari materia and should be construed together `as the unitary and harmonious whole'" Neptune Bd. of Educ. v. Neptune Tp. Educ. Assn., 144 N.J. 16, 23, 675 A.2d 611 (1996) (quoting Red Bank Bd. of Educ. v. Warrington, 138 N.J.Super. 564, 569, 351 A.2d 778 (App.Div.1976) (quoting Porcelli v. Titus, 108 N.J.Super. 301, 309, 261 A.2d 364 (App.Div.1969), certif. denied, 55 N.J. 310, 261 A.2d 355 (1970))).
Secondly, implied repealers are disfavored. Mahwah Twp. v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 280-81, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). A conclusion that a repeal has occurred requires clear and compelling evidence, free from reasonable doubt that the Legislature intended a repeal. Ibid.; Coalition of Health Care Prof'ls, Inc. v. Department of Banking and Ins., 323 N.J.Super. 207, 255, 732 A.2d 1063 (App.Div.1999), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). When two statutes may stand together, each governing its own sphere of operation, there is no inconsistency from which an intent to repeal may be inferred. Health Care Prof'ls, supra, 323 N.J.Super. at 255, 732 A.2d 1063. The "notwithstanding" introductory clause of N.J.S.A. 18A:27-4.1 does not amount to an express repealer, as contended by the Board, see New Jersey State PBA v. Morristown, 65 N.J. 160, 164, 320 A.2d 465 (1974), and it fails to pass muster as an implied repealer.
The two statutes involved in this case are easily reconciled. N.J.S.A. 18:27-4.1 concerns the mechanics of a renewal/non-renewal decision, specifying that a board may renew a contract only if the CSA has so recommended. If the CSA does not recommend renewal the board lacks authority to renew, unless the employee can convince the board otherwise at the "informal appearance" to which the employee is entitled after being notified of the non-renewal recommendation. N.J.S.A. 18A:27-4.1b. Thus, although the law generally circumscribes the independent judgment of the board, the final decision remains with the board.
N.J.S.A. 34:13A-23 operates only after the board has made a decision not to renew. The statute authorizes parties to have agreed on a neutral forumhere, arbitrationfor resolving disputes over whether the local decision-maker violated any law or contractual obligation in determining not to renew a teacher's extracurricular assignment. For example, the arbitrator may consider whether statutory violations occurred, such as under N.J.S.A. 18A:27-4.1, the Law Against Discrimination, N.J.S.A. 10:5-1 to -42, or the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, or whether any contractual protections were breached.
*317 N.J.S.A. 34:13A-23, by its terms, specifically governs the present dispute; it expressly applies to non-renewals of extracurricular assignments, declaring that "[a]ll aspects" of such assignments are mandatorily negotiable (except for the qualifications of the positions). In contrast, N.J.S.A. 18A:27-4.1 does not expressly purport to address scope-of-negotiations questions at all. Rather, it only defines how a local board may act on its CSA's recommendation.
Clearly, the subject matter of the two statutes is different and non-conflicting. The 1990 law addresses a question of public-sector collective bargaining, decreeing that it does not offend public policy for school boards and teachers to negotiate over, and agree to, procedures for settling disputes about extracurricular assignments. The 1995 law, in contrast, says nothing about the bargaining process or issues subject to it. Rather, as reflected in its legislative history, that provision merely purports to clarify the respective roles of a local board and its CSA in making personnel decisions.
The subject matter of the 1995 law is not negotiability but rather the relative powers of the board and the CSA. Thus, the introductory clause, "[n]otwithstanding the provisions of any law, rule or regulation to the contrary," must be taken, logically and semantically, as referring to any law that treats the same subject in a conflicting way. We share PERC's reasonable view that this clause was designed to encompass related provisions, such as N.J.S.A. 18A:27-1 which empowers the local board to appoint teaching staff members, and which we, in Rotondo, had cited in support of our holding that a board need not follow its CSA's recommendation.
We also reject the Board's alternative argument that N.J.S.A. 18A:27-4.1 is pre-emptive. In the employer-employee relations area, disputes which have been pre-empted by statute are non-negotiable. See Brown v. Township of Old Bridge, 319 N.J.Super. 476, 495-96, 725 A.2d 1154 (App.Div.1999), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). To qualify as being preemptive, a statute must "expressly, specifically, and comprehensively" fix the pertinent term of employment, Council of New Jersey State College Locals v. State Bd. of Higher Educ., 91 N.J. 18, 30, 449 A.2d 1244 (1982), and it must "speak in the imperative" and leave nothing to the discretion of the public employer, State v. State Supervisory Employees Association, 78 N.J. 54, 80, 393 A.2d 233 (1978); see also State Troopers Fraternal Assoc. v. New Jersey, 149 N.J. 38, 51, 692 A.2d 519 (1997). The Board's arguments fall well short of persuading us that N.J.S.A. 18A:27-4.1 expressly precludes negotiations over non-renewals.
The Board further challenges the arbitrability of this matter by arguing that Scelba's sole remedy is with the Commissioner of Education in the pending petition filed under the school laws. We have held that the arbitration remedy and the school law remedy are not mutually exclusive, see Bd. of Educ. of Borough of Fair Lawn v. Fair Lawn Educ. Ass'n, 174 N.J.Super. 554, 559-60, 417 A.2d 76 (App.Div.1980), and we have been given no reason to reach a contrary result in this matter. The issue before the Commissioner is whether the Board breached specific notice requirements or violated other procedural essentials established under Title 18A, and whether Scelba is entitled to reinstatement and back pay as a result. The issue before the arbitrator as framed on Scelba's behalf will be whether the board violated the provisions of the collective bargaining agreement. The arbitrator will not be deciding questions reserved to the Commissioner. And, the Commissioner will not be enforcing the contract or awarding relief based on a breach of contract; those are determinations for the arbitrator to make. See id. at 560, 417 A.2d 76. Thus, we conclude that the pendency of a proceeding before the Commissioner does not serve to bar the arbitration.
*318 We also reject the Board's alternative to its statutory repeal or preemption argument, that even if N.J.S.A. 34:13A-23 is read as authorizing an arbitration in this case, the statute represents an unconstitutional delegation of governmental power to a private party, an arbitrator. It is clear that the statute, as a provision of the New Jersey Employer-Employee Relations Act subject to the general standards embodied in that Act as interpreted by the courts, does not amount to an invalid delegation. Viewed in the light of the Act taken as a whole and by the norms employed in the pertinent case law, we cannot conclude that this particular provision fails the three-part test of Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 164, 393 A.2d 278 (1978), for determining whether any particular delegation is constitutionally sustainable, i.e., that it "must be narrowly limited, reasonable[,] and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally." It is clear that the arbitrator in ruling upon this dispute will not be setting educational policy, and will be called upon to decide only whether the non-renewal decision conformed with the parties' agreement and the requirements of law. An arbitrator in the public sector is bound to apply pertinent statutory criteria and to consider the public interest and welfare. See State v. Communications Workers, AFL-CIO, 154 N.J. 98, 112, 711 A.2d 300 (1998) (noting the broad scope of judicial review applicable to public sector arbitration awards and stating that reversal is appropriate whenever an "award violates law or public policy"); South Plainfield Bd. of Educ. v. South Plainfield Educ. Ass'n, 320 N.J.Super. 281, 288, 727 A.2d 71 (App.Div.) (same), certif. denied, 161 N.J. 332, 736 A.2d 525 (1999). In general, statutes allowing arbitration of public-employment disputes are not seen as unduly interfering with managerial prerogatives, given the narrow scope of an arbitrator's inquiry. See, e.g., New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors, 143 N.J. 185, 204-05, 670 A.2d 1 (1996).
One other issue has been raised which we will not address. Initially, the Board urged us to decide whether the collective bargaining agreement permits arbitrability of this dispute. That is an issue which was not raised before PERC, nor could it have been. Questions of contractual arbitrability are reserved to the courts. Ridgefield Park, supra, 78 N.J. at 153-54, 393 A.2d 278; see also State v. State Troopers Fraternal Ass'n, 134 N.J. 393, 399-400, 634 A.2d 478 (1993).
In the face of JEA's responsive arguments that the issues are contractually arbitrable, the Board has since "abandon[ed] its contention" that the issues were not contractually arbitrable, "since there is no record below on [the] issue." We decline to exercise original jurisdiction on the issue, leaving the matter for decision in the first instance by a trial court after an appropriate record has been made and the parties have had a full opportunity to develop their positions.
Finally, we are constrained to comment upon a non-substantive aspect of the appeal unaddressed in the briefs, but which we raised at oral argument in our colloquy with counsel for PERC. We have serious reservations about the propriety or wisdom of PERC's appearance as a party in the appeal with a brief and oral argument addressing the merits of the dispute.
Where a State agency's role in an administrative matter is solely that of a forum for the resolution of a dispute committed to its quasi-judicial authority, as distinguished from also being an actual party to the controversy or possessing fiduciary responsibilities or functioning in some other capacity bearing upon the merits, see, e.g., Suburban Sav. & Loan Ass'n v. Commissioner of Banking, 150 N.J.Super. 339, 344-45, 375 A.2d 1185 (App.Div. 1977), certif. denied, 75 N.J. 27, 379 A.2d 258 (1977), it seems inappropriate that the *319 agency should take a position on the merits when the matter is on appeal. The merits views of a court whose decision is being reviewed are seen to be properly expressed only in the formal decision rendered. We see no good reason why an administrative agency, in its role as decision maker in a quasi-judicial matter, should not be expected to maintain the same level of nominal detachment that is considered to be the norm for other tribunals. Such policy interests as the agency may have in the outcome ought to be apparent from the decision itself or from the legislation or administrative rules and regulations pertaining to the subject matter at issue.
This is a problem that requires serious study and reflection, if for no other reason than because we are questioning the validity of a practice that has been fairly common for years. We will refer the question to the Supreme Court's Civil Practice Committee.
Affirmed.
NOTES
[*] Donaldson v. Wildwood Bd. of Ed., 65 N.J. 236, 246, 320 A.2d 857 (1974); see also N.J.S.A. 18A:27-4.1b.